ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.*
Celestine McDONALD and Mark Jorden

CA 02-216                                              91 S.W.3d 536

Court of Appeals of Arkansas
Division I
Opinion delivered December 11, 2002

*Richard Neil Rosen*, for appellant.

*Floyd J. Taylor, Jr.*, for appellee.

*Sharon Bray Taylor*, Attorney Ad Litem.

JOHN B. ROBBINS, Judge. This is the second appeal in this matter. On October 25, 1999, appellant Arkansas Department of Human Services filed a petition for emergency custody of appellee Mark Eric Jorden's three children. Dependent-neglect proceedings were scheduled, but Mr. Jorden was not permitted to participate because the trial court found that he lacked standing. Mr. Jorden appealed, and in *Jorden v. Arkansas Dep't of Human Servs.*, 73 Ark. App. 1, 38 S.W.3d 914 (2001), we held that the trial court erred in this regard, and we reversed and remanded.

Subsequent to our remand, a hearing was conducted on appellant's petition to find the children dependent-neglected. At the hearing, Mr. Jorden did not contest the appellant's assertion that his son, Paris, was dependent-neglected. However, he contested the allegations pertaining to his other children, Mark and Jasmine. After the hearing, the trial court found that ADHS failed to prove by a preponderance of the evidence that Mark and Jasmine are dependent-neglected. ADHS appeals from this ruling, arguing that the trial court erred in not finding Mr. Jorden to be

an unfit parent, and in failing to adjudicate Paris's siblings as dependent-neglected because they were at a substantial risk of serious harm. We agree, and we reverse.

The juvenile code requires proof by a preponderance of the evidence in dependency-neglect proceedings. Ark. Code Ann. § 9-27-325(h)(2)(B) (Repl. 2002). At the time of the adjudication hearing, a dependent-neglected juvenile was defined as "any juvenile who as a result of abandonment, abuse, sexual abuse, sexual exploitation, neglect, or parental unfitness is at substantial risk of serious harm." Ark. Code Ann. § 9-27-303(15)(A) (Supp. 1999).[1] Arkansas Code Annotated section 9-27-302(2)(B) (Repl. 2002) provides that one purpose of the juvenile code is "[t]o protect a juvenile by considering the juvenile's health and safety as the paramount concerns in determining whether or not to remove the juvenile from the custody of his or her parents[.]"

■ On appeal from a trial court's ruling in a dependency-neglect case, we will not reverse the trial court's findings unless they are clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses. *Johnston v. Arkansas Dep't of Human Servs.*, 55 Ark. App. 392, 935 S.W.2d 589 (1996). A finding is clearly erroneous when, although there is evidence to support the finding, after reviewing all of the evidence the reviewing court is left with a definite and firm conviction that a mistake has been made. *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996).

Evidence presented at the adjudication hearing established that Mr. Jorden moved to Arkansas from Omaha, Nebraska, in 1998 and maintained custody of the children while their mother remained out of state. At the time of the hearing, Paris was seven years old, Jasmine was eight years old, and Mark was nine years old. The conduct that instigated the current proceedings occurred in October 1999, when Paris was five.

---

[1] After the hearing, but before the trial court's order was entered, the definition of "dependent-neglected juvenile" was extended to include a juvenile at substantial risk of serious harm caused by "parental unfitness to the juvenile, a sibling, or other juvenile." *See* Ark. Code Ann. § 9-27-303(16)(A) (Repl. 2002). However, neither ADHS nor the attorney ad litem for the children argue that the amended definition is applicable.

By Mr. Jorden's own admission, he punished Paris by repeatedly spanking him on October 18, 1999, and he "went too far." He testified that Paris had been coming home with "corporal punishment slips" for misbehaving at school, so he hit him on his bare bottom several times with a paddle while Paris was lying on his bed. After this incident, Mr. Jorden kept Paris home from school for the next two days, during which he did not notice any limping or visible wounds. Mr. Jorden pleaded guilty to second-degree battery in connection with the wounds he inflicted on Paris, and was sentenced to five years' probation for the felony conviction. One of the conditions of his probation is that Mr. Jorden can have no unsupervised contact with minors.

There were several witnesses who testified about Paris's injuries. Cathryn Laurent, a counselor at Paris's elementary school, testified that on October 21, 1999, she called him into her office after noticing that he was walking with a limp. She asked Paris to take a seat, but he would not sit down. Ms. Laurent called the nurse into her office and, upon examining Paris, they found that his underwear was matted to his bottom. Ms. Laurent stated that "it was like puss had dried up on his bottom" and that it appeared that he had been wearing his underwear for a couple of days or so. The nurse tried to remove Paris's underwear, but it was causing him so much pain that she had to stop.

The school nurse, Elaine Felsman, testified that Paris told her that his daddy hit him with a stick. She observed that his underwear "was stuck to him due to bloody drainage," and also noticed that he had marks on his face and a swollen hand.

Ms. Felsman also recounted a prior episode involving Jasmine. She testified that in September 1999, Jasmine had injuries to her arm and leg with some swelling. Ms. Felsman thought Jasmine's arm might be broken, so she put it in a sling. When Mr. Jorden came to get Jasmine, he pulled the sling off, stating, "It's not broken." According to Ms. Felsman, he appeared very upset and somewhat angry, and quickly left with the child.

Dr. Tearani Williams examined Paris on the day his injuries were discovered. Dr. Williams observed what appeared to be a burn over his right eyebrow, swelling of his right arm and hand,

and open wounds on his buttocks. The doctor stated, "The injuries to his buttocks were open lesions, . . . surrounded by what appeared to be healing scars." Dr. Williams testified that the marks on Paris's buttocks had the appearance of burns and stated, "It is possible that if salt were applied to an open wound, it would cause similar burns to what Paris had."

Donna Johnson, a specialist with the ADHS, also testified. She stated that she slowly pulled off Paris's underwear, and that it took about fifteen to twenty minutes. He had urinated in his underwear, and Paris indicated that he had done so because his father would not let him go to the bathroom.

In Mr. Jorden's testimony, he denied putting salt in Paris's wounds. He further denied ever spanking Jasmine or Mark, and indicated that they were not present when he spanked Paris.

All three of Mr. Jorden's children testified. Paris stated that his father spanked him around five times with a spoon, causing sores, and then added salt to the wounds. Paris stated, "he hurt me a lot," and, "after this happened, I am afraid of my dad." Jasmine stated that she witnessed the beating, and that her father had spanked her with the same piece of wood in the past. Jasmine further testified that Mr. Jorden poured salt in Paris's wounds, and that she is afraid he will spank her if they are reunited. Mark testified that he saw his father hit Paris about five times, that he has been spanked by his father in the past, and that after spanking Paris, his father put salt in the wounds.

In its order finding that Jasmine and Mark are not dependent-neglected, the trial court accepted the testimony that Mr. Jorden caused "extreme serious injury" to Paris, and found that "the beating appeared to occur in a vicious and savage fashion indicating great anger by the perpetrator of the beating." However, in denying the ADHS's petition with regard to Jasmine and Mark, the trial court announced:

> Clearly, a preponderance of the evidence has been established to show that Mr. Jorden severely and cruelly beat and injured Paris while the other children were watching and in an act of incomprehensible cruelty, poured salt upon these open wounds to further cause excruciating pain to this 5 ½ year old child. This

conduct is totally reprehensible and abhorrent to this Court as it should be to any responsible person. This Court believes that Mr. Jorden grossly breached his parental duty to this child when he physically abused him. This does not mean that he is an unfit parent. This does not mean that the other children are substantially at risk of serious harm. Further proof is required other than one act of abuse.

ADHS now argues that the trial court clearly erred in failing to find Mark and Jasmine dependent-neglected. ADHS cites *Brewer v. Arkansas Dep't of Human Servs.*, 73 Ark. App. 364, 43 S.W.3d 196 (2001), where we held that parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question. In that case, we upheld a finding of dependency-neglect with regard to an infant, notwithstanding the fact that the infant had not been abused, based on evidence that the infant's older sibling had been severely physically abused over a period of time. ADHS submits that, due to the severity of the abuse and other circumstances of this case, the trial court erroneously failed to find Mr. Jorden to be unfit and the two children at issue at substantial risk of serious harm, on the flawed basis that, "Further proof is required other than one act of abuse."

■ We agree that the trial court's failure to adjudicate Mark and Jasmine dependent-neglected was clearly erroneous. In *Brewer v. Arkansas Dep't of Human Servs.*, *supra*, we announced:

> Parental unfitness is not necessarily predicated upon the parent's causing some direct injury to the child in question. Such a construction of the law would fly in the face of the General Assembly's expressed purpose of protecting dependent-neglected children and making those children's health and safety the juvenile code's paramount concern. To require Logan to suffer the same fate as his older sister before obtaining the protection of the state would be tragic and cruel.

73 Ark. App. at 368, 43 S.W.3d at 199. The above reasoning is applicable in the case at bar. While Jasmine and Mark have not been directly injured by Mr. Jorden, Mr. Jorden's abuse of Paris demonstrated parental unfitness that puts Jasmine and Mark at substantial risk of serious harm.

■ As ADHS points out in its brief, there is more to this case than the severe whipping of Paris. Subsequent to that event, Mr. Jorden poured salt into the extensive wounds. The evidence shows that, rather than seeking medical care for Paris, Mr. Jorden kept him home, in the same pair of underwear, for two days while the bleeding and oozing caused the underwear to stick to his buttocks, and the pain and burning continued. The trial court correctly characterized the pouring of salt into the wounds as "an act of incomprehensible cruelty," and Mr. Jorden's actions were tantamount to torture. The battery committed against Paris was so severe that it is a violation of Mr. Jorden's probation to have unsupervised contact with *any* minors, which includes his own children. Based on the evidence presented, we are compelled to reverse the decision of the trial court.

Reversed and remanded.

GRIFFEN and CRABTREE, JJ., agree.