2011 Ark. App. 522

**Jessica ANDERSON and James Anderson, Appellants**

**v.**

**ARKANSAS DEPARTMENT OF HUMAN SERVICES; Minor Children, Appellees.**

**No. CA 11–202.**

Court of Appeals of Arkansas.

Sept. 14, 2011.

Leah Beth Lanford, Little Rock, for Appellants.

Tabitha Baertels McNulty, Little Rock, Melissa Bristow Richardson, Jonesboro, for the Appellees.

ROBERT J. GLADWIN, Judge.

Appellants James and Jessica Anderson appeal from a November 29, 2010 permanency-planning order in Lonoke County Circuit Court awarding permanent custody of their three children to their relative, Natasha Northweather. We affirm.

### Facts

This case was initially opened on July 1, 2009, when the Andersons sought medical treatment for an arm injury to then three-year-old J.A.(2), which prompted a call by hospital staff to the Arkansas Department of Human Services ("DHS") for suspected child abuse. J.A.(2) had a broken arm, which was classified as a "significant arm injury with complete transverse fractures across both of the bones in his forearm." The type of injury sustained was a high-force injury, and the Andersons' explanation that the injury occurred when J.A.(2) was "rough housing" with his three-year-old brother, J.A.(1), was not medically consistent with the extent of the injury.

After an investigation, DHS exercised an emergency hold on J.A.(1) and J.A.(2); Mrs. Anderson was pregnant with A.A. at the time. J.A.(1) and J.A.(2) were removed and placed in the custody of their cousin, Ms. Northweather, immediately after their removal, and a goal of reunification was implemented. J.A.(1) and J.A.(2) were adjudicated dependent-neglected on October 5, 2009, when the circuit court found that they suffered injuries while in the care and control of the Andersons.

The circuit court scheduled a review hearing for February 1, 2010; however, on January 31, 2010, Mrs. Anderson gave birth to A.A. DHS sought emergency custody of A.A., and the baby also was placed in foster care with Ms. Northweather. In the affidavit supporting the petition for emergency custody and dependency-neglect, evidence was presented that at the time A.A. was born, some six months into the case, the Andersons' home was unkempt and posed a hazard to any child in

the home. Secondary caseworker Erica Darden explained that the cigarette smoke was so thick that it irritated her eyes and that there was trash all over the floor and tables. Additionally, the baby's bed was dirty and difficult to reach, and there was dirty dishwater in the sink that Ms. Darden suspected had been stagnant for a week or more.

The circuit court held a probable-cause hearing with regard to the removal of A.A. on February 8, 2010. At that time, the circuit court found that DHS had made reasonable efforts to prevent A.A.'s removal as outlined in an affidavit. The affidavit explained that DHS was providing homemaker services, parenting classes, anger management, employment services, counseling, and visitation. Additionally, evidence indicated that Ms. Darden was making frequent visits to the home. The circuit court found probable cause that A.A. should remain out of the home because the Andersons "have not proven satisfactorily that they can adequately care for the needs of their children."

The review hearing for J.A.(1) and J.A.(2) that had been scheduled for February 1, 2010, was rescheduled for the same day as A.A.'s adjudication hearing on March 1, 2010. The parties agreed to continue both hearings until April 19, 2010. On April 19, 2010, the Andersons requested and received a continuance until May 3, 2010. On May 3, 2010, the parties again agreed to continue the matter until June 22, 2010. On June 18, 2010, the Andersons again requested a continuance, which was granted until September 7, 2010.

The circuit court adjudicated A.A. as dependent-neglected at that time pursuant to the stipulation of the Andersons as to "environmental neglect and imminent danger of severe child maltreatment or neglect." The circuit court specifically found the allegations in the petition to be true and correct and reaffirmed all of its findings from the February 8, 2010 probable-cause hearing, including the finding that DHS made reasonable efforts to prevent A.A.'s removal. At this hearing, the circuit court also ordered counseling for the children. This hearing was held on the same day as the first permanency-planning hearing, during which the circuit court found that DHS had made reasonable efforts and continued the goal of reunification with the Andersons. The circuit court stated that the Andersons would be given an additional three months and set the case for a fifteen-month review hearing to be held on November 1, 2010. The Andersons did not appeal from either the February 8, 2010 hearing or the September 7, 2010 hearing.

At the beginning of the November 1, 2010 hearing, the circuit court stated that the parties were present for a fifteen-month review hearing; however, the resulting order stated that it was a permanency-planning hearing.[1] Ultimately, the circuit court found that the Andersons had complied and made progress in the case plan but concluded that continuing the goal of reunification with the Andersons was not in the minor children's best interest because reunification could not occur in a time frame that was in the children's best interest. The circuit court granted permanent custody of the children to Ms. Northweather. The Andersons appeal only from the order of the circuit court entered on November 29, 2010.

### Standard of Review

The burden of proof in dependency-neglect proceedings, including re-

---

1. Regardless of the order's heading, based on the timing of the hearing, we deem the November 29, 2010 order the result of the fifteen-month review hearing.

views and permanency-planning hearings, is preponderance of the evidence. Ark. Code Ann. § 9–27–325(h)(2)(B) (Repl. 2009). The standard of review is de novo, but the appellate court will not reverse unless the circuit court's findings are clearly erroneous. *See Judkins v. Duvall,* 97 Ark.App. 260, 248 S.W.3d 492 (2007). The appellate court, giving due regard to the circuit court's opportunity to judge the credibility of the witnesses, will not reverse the circuit court's ruling in a dependency-neglect case, unless the ruling was clearly erroneous. *Ark. Dep't of Human Servs. v. McDonald,* 80 Ark.App. 104, 91 S.W.3d 536 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* Moreover, on de novo review the appellate court will only reverse on grounds properly argued by the appellant. *See Country Gentleman, Inc. v. Harkey,* 263 Ark. 580, 569 S.W.2d 649 (1978).

### Analysis

The Andersons argue that the circuit court failed to comply with the permanency-planning-statute priorities, codified at Arkansas Code Annotated section 9–27–338 (Repl.2009), because it granted permanent custody to a relative without first considering reunification. They contend that the circuit court was bound to authorize a plan to return the children to them because this goal is preferred over granting permanent custody to a relative when the parents are complying with court orders and the case plan and are making progress. The Andersons submit that there is insufficient evidence to support the circuit court's finding that it was in the children's best interest to award permanent custody to the children's relative because DHS acknowledged that the Andersons were in compliance and posed no harm to the children, as well as the fact that DHS had temporarily misplaced certain referrals for reunification services.

Specifically at issue is section 9–27–338(c), as amended in Act 956 of 2009. It provides, in pertinent part, that at the permanency-planning hearing, the circuit court shall enter one of the following permanency goals, listed in order of preference, in accordance with the best interest of the juvenile:

(1) Returning the juvenile to the parent at the permanency planning hearing if it is in the best interest of the juvenile and the juvenile's health and safety can be adequately safeguarded if returned home;

(2) Authorizing a plan to return the juvenile to the parent if the court finds that:

> (A) the parent is complying with the established case plan and order of the court, making significant measurable progress toward achieving the goals established in the case plan and diligently working toward reunification;

> (B) the parent is making significant and measurable progress toward remedying the conditions that caused the juvenile's removal and the juvenile's continued removal from the home; and

> (C) the return of the juvenile to the parent can occur within three months from the date of the permanency planning hearing.

Ark.Code Ann. § 9–27–338(c)(1)–(2).

A plan for permanent custody with a fit and willing relative is also an option but is number five on the list in order of preference. The Andersons note that where "continued reunification" was previously the fifth preferred goal, it is the second preferred goal under the 2009 version of the statute. They note that the goal of perma-

nent-custodial placement was moved from fourth position to that of fifth position in the amended statute. *See* Ark.Code Ann. § 9–27–338(c)(5). The Andersons argue that, in changing the order of preferred goals for the circuit court to consider, the legislature delivered a strong message that children should remain with their parents when those parents have made the necessary improvements, and parents should not be deprived of an opportunity to reunify with their children simply because they are not ready on the day of the permanency-planning hearing but are making progress to reach that point.

The Andersons submit that the evidence presented indicates that, during the fifteen-month-long case, there had been no review hearings between the time the children ₇were adjudicated dependent-neglected, with seven continuances granted. Additionally, they maintain that, had the circuit court presided over the case in the usual manner, holding review hearings and monitoring the progress of the case, it would have known that the case had "derailed" with regard to the most critical of reunification services and realized that those services, including counseling for the children, did not get back on track until one month prior to the final hearing.

The Andersons contend that DHS recommended termination of the Andersons' parental rights, not because they posed a threat of harm to the children, but because Ms. Northweather had indicated that the children regressed in their behavior after visits with the Andersons.

The Andersons note, however, that Ms. Darden acknowledged that the children were working with their therapist on their behavior but that the therapy had begun just a few weeks prior to the final hearing.

The Andersons assert that they rectified all issues relating to their parental fitness and that the only issue remaining was not with them, but with the children's behavior. They reiterate that this issue was being remedied, although it had taken fourteen months for DHS to make the referral for the service. The Andersons claim that they met the burden of demonstrating a "genuine, sustainable investment in completing the requirements of the case plan and following the orders of the court in order to authorize a plan to return home as the permanency goal" as required by section 9–27–338(c)(2)(A)(iii). They claim that the improvements that they made are those that parents are encouraged to make in the best ₈interests of their children, and they argue that they should not be disparaged for their efforts to improve their shortcomings. Accordingly, they request that the circuit court's order be reversed.

█ We initially note that neither the abstract nor the record reflects that the Andersons' arguments were raised below or that the circuit court ever made any ruling on the matter. It is well settled that the failure to raise a challenge or obtain a ruling below is fatal to the appellate court's consideration of an issue on appeal. *Bryant v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 390, 383 S.W.3d 901.

Additionally, as DHS points out, commensurate with the federal Adoption and Safe Families Act of 1997, Pub.L. No. 105–89 (codified as amended at 42 U.S.C. §§ 670–679), the Arkansas Juvenile Code ("Juvenile Code") outlines the series of judicial proceedings followed in dependency-neglect cases to achieve a minor child's best interest. The federal law requires that federal funding for reunification services cease fifteen months after a child first enters foster care. 42 U.S.C. § 629a(a)(7). The Juvenile Code provides that, when a child has been in an out-of-home placement for fifteen months, the

circuit court cannot continue reunification services and must authorize a plan for the termination of parental rights unless one of various circumstances exists. Ark.Code Ann. § 9–27–359 (Supp.2009). For example, the termination of parental rights can be avoided if the minor child "is being cared for by a relative." Ark.Code Ann. § 9–27–359(b)(1)(A).

▌ Regardless of whether the disputed decision was the result of a fifteen-month review hearing pursuant to section 9–27–359 or a second permanency-planning hearing pursuant to |₉section 9–27–338, the outcome was consistent with the provisions of the relevant statutes. Because the Andersons claim reversible error based on the circuit court's refusal to do what is prohibited by the statutes, reversal is unwarranted. *See Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

▌ The Andersons also attack the circuit court's decision by complaining that DHS did not provide meaningful services, and they argue that the failure to timely review the case denied the circuit court an opportunity to adequately measure their progress or to correct the problems occurring within DHS's handling of the case. Nothing in the record demonstrates that the Andersons ever lodged an objection regarding this issue. The Andersons either requested or agreed to each continuance in this case. Error is not presumed; therefore, it is the Andersons' burden to produce a record on appeal demonstrating grounds for reversal. *Johnson v. State,* 342 Ark. 357, 28 S.W.3d 286 (2000). On appeal, the appellate court will not reach an issue where the abstract does not show that it was raised in the circuit court. *Id.*

▌ Moreover, it is undisputed that the circuit court made prior reasonable-efforts findings in this case, which were not ap-

pealed. The failure to appeal from any of the previous orders in which a circuit court has determined that DHS made meaningful efforts toward reunification precludes this court from reviewing those findings with respect to the periods of time covered by those prior orders. *See Fredrick v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, 377 S.W.3d 306. As such, this court is precluded from reviewing the findings with respect to the time periods covered by the prior orders. *See Edwards v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 739, 379 S.W.3d 609.

▌ |₁₀The only time period appropriately reviewable in this appeal is the approximate two-month lapse of time between the first permanency-planning hearing on September 7, 2010, and the November 1, 2010 hearing. During that time period, DHS offered homemaker services, counseling for the children and the Andersons, visitation, staffing, and child-welfare services. Also, prior to the November 1, 2010 hearing, the Andersons received two sets of parenting classes, psychological evaluations, homemaker services, and random drug screens.

The issue at the November 1, 2010 hearing was not the absence of services; rather it was the children's well being and the Andersons' inability to fully benefit from the services. The caseworkers testified that there were no additional services that could be provided to the Andersons. After completing two different sets of parenting classes, they were still unable to demonstrate an ability to appropriately care for the children despite their best attempts.

The two older children have been in the home of Ms. Northweather since July 2009. The visits between the Andersons and the children generally occur at the home of Mr. Anderson's parents. Additionally, A.A. has resided in Ms. Northweather's home since birth, and the tes-

timony established that A.A. has a severe allergy and bad reaction to cigarette smoke. Yet A.A. continually returned from visits with the Andersons smelling of cigarettes. A major barrier to reunification was the children's regressive behavior after visiting with the Andersons. The children still feared the Andersons, and after visitation, they became extremely aggressive, biting and punching, wetting the bed, and having nightmares. The children's counselor, Cary Ingram, was able to pinpoint that the nightmares and aggressive behavior were caused by the visitations with the Andersons.

At the November 1, 2010 hearing, Mr. Ingram indicated that he believed the children would need, at a minimum, an additional six months of counseling to address anger and anxiety issues. He stated that he believed "at this point it would be more detrimental for the [Andersons] to be involved in the children's lives at all."

Arkansas Code Annotated section 9–27–359 instructs that a fifteen-month review hearing is held to determine whether DHS should file a petition for termination of parental rights if the children have been out of the home for fifteen months and the goal at the permanency-planning hearing was reunification. The statute provides:

(b) The circuit court shall authorize the department to file a petition to terminate parental rights unless:

(1)(A) The child is being cared for by a relative or relatives; and

(B) Termination of parental rights is not in the best interest of the child;

(2)(A) The department has documented in the case plan a compelling reason why filing a petition is not in the best interest of the child; and

(B) The court approves the compelling reason as documented in the case plan; or

(3) The department has not provided to the family of the juvenile, consistent with the time period in the case plan, the services the department deemed necessary for the safe return of the child to the child's home if reunification services were required to be made to the family.

Ark.Code Ann. § 9–27–359(b). In the instant case, the circuit court did not authorize DHS to seek termination of the Andersons' parental rights. This is a favorable ruling to the Andersons, particularly when viewed in the context of the subject order substantively operating as a fifteen-month review hearing, rather than a permanency-planning hearing. Given that section 9–27–359 requires the circuit court to authorize a termination petition except on limited grounds after fifteen months, the circuit court's decision to award permanent-relative custody and still provide an opportunity for visitation with the parents does not constitute error.

Affirmed.

PITTMAN and BROWN, JJ., agree.