

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-403

|  |  |
|---|---|
| | **Opinion Delivered** September 18, 2013 |
| JANICE BURNS | APPEAL FROM THE LEE COUNTY |
| APPELLANT | CIRCUIT COURT |
| | [NO. 39JV-11-20] |
| V. | |
| | HONORABLE ANN B. HUDSON, |
| ARKANSAS DEPARTMENT OF | JUDGE |
| HUMAN SERVICES and MINOR | |
| CHILDREN | |
| APPELLEES | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Janice Burns appeals the February 7, 2013 permanency-planning order of the Lee County Circuit Court awarding permanent custody of her daughter, D.S. (D.O.B. 05-21-10), to her paternal grandparents, Mr. and Mrs. Swiney, and closing the dependency-neglect case.[1] Appellant argues that the trial court erred in awarding the Swineys permanent custody of D.S. and closing the case when "the evidence clearly established that the child could be returned within three months, as anticipated by the second goal of the permanency-planning hearing." We find no error and affirm.

This case opened following a September 6, 2011 call to the Lee County Division of Children and Services hotline concerning suspected abuse of D.B. by appellant. An

---

[1]The court also placed appellant's other two daughters, D.D. and D.B., with Donald Burns and closed the case. However, that placement is not an issue in this appeal.

SLIP OPINION

investigator arrived at appellant's home that same day, and appellant pushed D.B. out the door (by placing her hand in the child's back) to speak with the investigator. Tension rose and D.B. began crying, stating, "I ain't do nothing mama." The investigator calmed the family and left. He returned the next day and noted that D.B. had told three different stories of how she received an injury to her left eye, including telling school officials that appellant had struck her in the eye with a plastic bat. The investigator noticed trash all over the apartment and informed appellant that she had to clean up the apartment. By the time he returned on September 13, 2011, appellant had attempted to clean the apartment. The Department of Human Services (DHS) substantiated the report of abuse, but due to appellant's attempt to clean the home, environmental neglect was not found at that time; however, DHS wanted to continue to monitor the state of appellant's apartment.

DHS petitioned the court on October 19, 2011, for protective services to the family due to appellant's "inappropriate behavior during the initial contact." An adjudication hearing took place on January 24, 2012. During the hearing, the court recessed and ordered appellant to allow DHS to take pictures of her home. She complied, and the court found the state of the home, as shown by the pictures, to be "horrible." The children were adjudicated dependent-neglected based on the allegations in the petition. The court found that appellant's housing arrangement placed a substantial risk of causing harm to the children and removed the children from appellant's custody. The adjudication order was filed of record on March 7, 2012. Review hearings took place on April 19, 2012, July 26, 2012, August 21, 2012, October 22, 2012, and November 14, 2012. At the November 14, 2012 hearing, the court

granted Nancy Swiney temporary custody of D.S.[2] In the review order filed December 4, 2012, the court found that the drug-and-alcohol assessment completed on appellant was not valid and that appellant's statements and testimony regarding her lack of drug usage was not credible.

The permanency-planning hearing took place on January 10, 2013. At the hearing, Marice Bragg, the case worker assigned to the case since October 2012, testified that appellant was "supposedly in residential rehab," but that she had not had the opportunity to speak with anyone from the treatment facility. She stated that she had requested a report from the facility, but had not received anything as of the time of the hearing. Bragg testified that appellant was given drug screens in Phillips County under Pamela Johnson and that some were negative and some were positive. She testified that appellant last failed a drug test on August 21, 2012. Bragg stated that appellant was living with her mother over the Christmas holiday, but that at the time of the November 14, 2012 review hearing, she was living with her boyfriend's family in West Helena. Bragg testified that she had just learned that appellant currently had a residence with her mother. She recommended that D.S. remain in the custody of the Swineys, and that the case be closed. Bragg stated that she had not had any contact with appellant since the last court date. According to Bragg, appellant informed her in October that she was moving, and Bragg had just recently received a new address for appellant. She said that appellant completed parenting classes, but that she was evicted from her last home for failing to pay her electricity bill. Bragg said that she recommended

[2]D.B. and D.D. were also placed in the temporary custody of Donald Burns.

permanent placement because of appellant's failure to maintain a stable housing environment and appellant's moving back and forth between Phillips and Lee Counties. Bragg stated that appellant had not presented her with (1) any documentation concerning her rehabilitation process, (2) any evidence of appellant's budget, or (3) any information of an income source.

Appellant testified that she was currently in rehabilitation, but that she and her mother were in the process of moving into a house on Kentucky Street. She said that she was last employed in 2009, and that she was trying to get disability until she started coming to court about her children. Appellant admitted that it was her fault that her children were removed from her custody, but she contended that she had done everything to be in compliance. She testified that she did not have a job; that she did not have her own money source; and that she had not applied to receive disability due to her back injury. She insisted that her positive drug screens were the result of medications she was taking for her illness. Appellant stated that Bragg had not made any home visits or returned any phone calls. She said that she kept DHS informed of her whereabouts via Pamela Johnson. She stated that she was scheduled to leave inpatient rehabilitation on January 14, 2013. Appellant said that she did not believe that she could work and that she planned on pursuing disability. She stated that she had not been invited to any staffings or furnished with any case plan since her case was transferred to Helena. According to appellant, the last staffing she attended and the last case plan she received was when she was still in Lee County, about a year ago.

Appellant testified that she found the house on Kentucky Street through her boyfriend; that her boyfriend had provided her with about $100 in the last six months; and that her

SLIP OPINION

mother also provides her with financial support. She said that her plan was to regain custody of her children, maintain housing for a period of time, and have her mother to help support her children. She testified that she was pregnant and that she eventually planned to marry her boyfriend and have him take over the household bills.

Anita Powers, appellant's mother, confirmed that she leased a house in Helena for appellant. She stated that she would also reside in the house while her home in Marianna was being remodeled. She said that she then planned to move back home and pay utilities at both places.

At the conclusion of the evidence, appellant made a motion to dismiss and a directed–verdict motion. The motion to dismiss was based on a new case plan that appellant knew nothing about that, according to appellant, violated her due process of law. Appellant also asked the court for a directed verdict because the evidence submitted did not substantiate a change in the goal. Appellant clarified the motions and explained that they were premised on the fact that DHS had provided only dismal services to appellant, with no services being provided since the case was transferred to Helena. Appellant argued that DHS had not complied with "reasonable efforts which is their burden of proof. They have not complied with their own department policies concerning how they develop case management plans and who they are distributed to." The court denied the motions, stating,

> Ms. Burns is represented by counsel, there was no testimony anywhere that she contacted her attorney, or that Ms. Whatley notified the Department that there wasn't a staffing or of any problem with the Department not providing services. I think that Ms. Whatley certainly, if Ms. Burns said she couldn't reach Mrs. Bragg, then Ms. Whatley certainly knows how to reach Mrs. Bragg.


The lack of services seems to me to have a great deal to do with the fact that she did not supply the Department with adequate address, phone numbers and information on how to reach her.

. . . .

The Court is further of the opinion that ... Ms. Whatley said that she thinks she is complying with the first Case Plan and I cannot agree with that. There has been no compliance with the first Case Plan. She has not maintained housing. She has not obtained employment. She has not even applied for or reapplied for Disability. The Court certainly does not fault anyone who is in a poverty situation or say that they should not have their children if they can overcome the problems of being able to provide for them. But here [I] have a real problem with, as was previously mentioned, everything being the fault of someone else. Everything being the fault of the Department. The relying on everyone but one's self to provide for the children.

While her mother may be willing to help her for a period of time and her boyfriend may give her some money from time to time, that is hardly a situation I think that is sustainable for a permanent plan for these children. And these children do need permanency.

As far as her truthfulness, that has been an issue, her credibility has been an issue throughout this case. I think that the Court made it abundantly clear at a previous hearing that the burden is on her to get information about her rehabilitation progress in front of this Court by either records that were subpoenaed pursuant to Arkansas Rules of Civil Procedure to be delivered directly to the Court. There is certainly a provision for that or in lieu of that, by a witness from the rehabilitation center. And neither one of those things happened.

. . . .

It breaks my heart to see children come in this Court Room and have to be questioned . . . they don't deserve to stay in limbo forever. They deserve to know where they are going to be. They deserve to not be afraid of where they are going to wake up the next day and at the present time, the testimony before the Court is the mother's trying to get her act together and getting a place to live and her mother is going to help her and so forth and so on.

But as Ms. Lynch very accurately put it, it has not happened yet. And we are here today and it hasn't happened. I would like to assume that it will happen but I don't know that it will happen or not. I would like to assume that when it happens it will work and be lasting. But I don't know whether it will or not.

And just learning that she is expecting a child, I have no idea what part the father of this child will play in her day to day life and we have absolutely no knowledge of him or what's going to happen with him. The place that they are renting has to do with him and his employer and we don't know the longevity of that either.

I just cannot place these children in that situation, not knowing any more than we do and not having any more validity with that situation that has been shown to the Court.

The list of problems here that this decision is on based on are: the attitude of the mother and her failure to be forthright with the Court on numerous occasions, the mother's failure and inability to admit that she has any problems. That happened with both the environmental concerns as well as with drug usage and apparently is still the case with the drug usage. Methamphetamine are not caused from other drugs. If there were drugs that she was given by a medical provider that would cause the methamphetamine then that medical provider should have been in this Court Room telling us that and his testimony would have been appropriate to show the Court that that was the case. . . .

The mother does not keep the Department informed of her whereabouts. She has remained unemployed. She does not have stable housing. The Department did not have a good physical address for her and there was no verifiable income sources provided.

The permanency-planning order and order of permanent custody was filed on February 7, 2013. This timely appeal followed.

The burden of proof in dependency-neglect proceedings, including reviews and permanency-planning hearings, is preponderance of the evidence.[3] The standard of review is de novo, but the appellate court will not reverse unless the circuit court's findings are clearly erroneous.[4] The appellate court gives due regard to the circuit court's opportunity to judge the credibility of the witnesses and will not reverse the circuit court's ruling in a

---

[3]Ark. Code Ann. § 9-27-325(h)(2)(B) (Supp. 2011).

[4]*Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, 385 S.W.3d 367.

7

dependency-neglect case, unless the ruling was clearly erroneous.[5] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made.[6] Moreover, on de novo review the appellate court will only reverse on grounds properly argued by the appellant.[7]

Appellant contends that the trial court erred by not following the order of permanency preferences set out in Ark. Code Ann. § 9–27–325(h)(2)(B).[8] According to appellant, the evidence showed that she was making significant and measurable progress toward the case plan requirements and that D.S. could be returned to her within three months. This argument was not presented to the trial court. Therefore, it is not preserved for appeal. It is well settled that our appellate courts will not consider arguments raised for the first time on appeal.[9] Even if the issue had been preserved, we would affirm. The court evaluated the evidence and testimony presented during the hearing, and subsequently concluded that it was uncertain what appellant would do and that D.S. needed permanency now. The evidence was sufficient to support the court's ruling.

Appellant also makes an argument concerning the lack of services she received from DHS. Evidence shows that the court made prior reasonable-efforts findings in this case,

---

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8](Supp. 2011).

[9]*Scudder v. Ramsey*, 2013 Ark. 115, ___ S.W.3d ___.

which were not appealed. The failure to appeal from any of the previous orders in which a circuit court has determined that DHS made meaningful efforts toward reunification precludes this court from reviewing those findings with respect to the periods of time covered by those prior orders.[10] As such, this court is precluded from reviewing the findings with respect to the time periods covered by the prior orders.[11]

The only time period appropriately reviewable in this appeal is the period of time between the November 14, 2012 review hearing, and the permanency-planning hearing. Appellant testified that she had not received any services since her case was moved to Helena. Testimony revealed that she was assigned a new case manager in October 2012. According to Bragg, when she initially made contact with appellant, appellant informed Bragg that appellant was moving and she did not provide Bragg with an address. Bragg testified that she had only recently been able to determine appellant's whereabouts. The court listened to the testimony and ultimately concluded that appellant's lack of services were due to her failure to keep DHS properly informed of her whereabouts. We cannot say that this finding was clearly erroneous. Therefore, we affirm.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.

---

[10]*Anderson*, *supra*.

[11]*Id*.

9