SLIP OPINION

2014 Ark. App. 515

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-14-343

| | |
|---|---|
| | Opinion Delivered October 1, 2014 |
| VIRTLE NENETTE HINES<br>APPELLANT | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT<br>[NO. JV-11-224] |
| V. | |
| | HONORABLE ANN B. HUDSON, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Virtle Hines appeals the order of the St. Francis County Circuit Court that granted permanent custody of three of her children to her parents, Alvirgil and Elton Hines. On appeal, Hines asserts that the circuit court erred in finding that the children could not be safely returned to her care and that it was not in the children's best interest to be permanently placed with their maternal grandparents. We affirm.

In December 2011, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of Hines's three children: A.J., born 9/28/09; S.J., born 5/31/07; and M.J., born 7/25/02.[1] The attached affidavit explained that a protective-service case was first opened on this family in November 2007 due to a true report of

---

[1] Hines is not married to the children's father, and it does not appear that he is involved in their lives.

environmental neglect. At that time, Hines was threatening to kill herself, and the family received mental-health services, transportation, and case-work counseling. The case was closed in February 2009 because Hines complied with the case plan.

On 13 December 2011, Hines presented herself to the local DHS office and stated that she could no longer care for her children. Hines reported that she was diagnosed with schizophrenia at twenty-two and has received treatment, that her symptoms worsened after the birth of two-year-old A.J., and that she hears voices telling her that the children are not safe and that someone is going to murder them. Hines explained that "she looks at cable a lot to drown out the voices, but the voices then start to talk to her directly through the television, telling her 'stupid stuff' and saying 'filthy things' to her." Hines stated that "her family doesn't visit or call, and it's just her and the children, all day, every day; and she can't take the pressure." Hines also admitted to being an alcoholic and to whipping M.J. with an extension cord and "occasionally slapping" M.J. After an assessment for treatment by Mid-South Health Systems, Hines was admitted to in–patient treatment at Delta Medical in Memphis.

When the children were taken into custody, M.J. had "loop type" injuries to her mid-torso and thighs consistent with being hit with a cord. A.J. had burn marks on his thighs, which Hines said were accidentally caused by an iron, and a bruise around his right eye. DHS asserted that Hines's "fragile mental and emotional health" placed the children's safety and well-being at risk and asked that the children remain in DHS custody.

The court granted the order for emergency custody and, in March 2012, adjudicated the children dependent-neglected. The goal of the case was reunification, and

Hines was ordered to continue mental-health treatment at Mid–South and take her medications as prescribed. In April 2012, the court placed the children in the temporary custody of Hines's parents, Alvirgil and Elton Hines, and designated relative placement as a concurrent goal of the case. The court ordered that visitation would be at the Hineses' discretion but that Hines could not live in the home or have overnight visitation.

A review order entered in October 2012 reflects that Hines was taking her medication and "appears to be doing better," and in November 2012, the court found that Hines had made "significant improvements" and was allowed extended visits with the children. In April 2013, the court again noted improvement on Hines's part and that it wished to hear testimony from April Bailey, Hines's counselor at Mid–South. After hearing Bailey's testimony, the court found that Hines was not sufficiently taking advantage of her therapy and ordered that her counseling be increased "significantly." The court later ordered that Bailey and Mid–South provide the court and DHS with monthly progress reports on Hines.

After several continuances, caused in part by Hines's failure to appear at scheduled hearings, a permanency-planning hearing was held over two days in December 2013 and January 2014. Bailey testified that she had not seen Hines from September 5 to December 4 because Hines failed to schedule any appointments. Bailey testified that she worked with Hines on awareness and coping skills. Bailey also testified that Hines contradicted herself "a lot" and that she was still experiencing hallucinations and paranoia. Sherea Henry, the DHS case worker, recommended permanent relative custody with the Hineses. Henry opined that Hines "hasn't made much progress with her mental health issues" and that

additional time would not correct the issue. Henry explained that Hines would do well at times, and other times she would not. Henry also stated that Hines had not satisfied DHS with regard to her attendance at counseling sessions and described some extended visitations with the children that had to be cut short because "she [Hines] had pretty much had all she could take." Henry also explained that DHS was ordered to provide transportation to Hines's appointments with her therapist but that it was up to Hines to call and schedule that transportation. Finally, Henry testified that Hines had a good relationship with the children but that DHS was making the relative-placement recommendation based on the children's safety.

Hines told the court that she was currently in counseling and attends day treatment three times a week at Mid-South. She admitted she had not seen Bailey as often as she was supposed to because some days she did not want to talk, did not feel like leaving the house, or had "other things to do." She believed that she posed no danger to the children and agreed that she needed to continue taking her medication. When asked if she could continue to change for the better, she said, "I can't say that I can but I can try."

In a written order filed 7 February 2014, the court found that the children could not return to the care of their mother, that they were doing well in the placement with their grandmother, and that it was in the children's best interest to remain in that placement. The court granted permanent custody to Alvirgil and Elton Hines and closed the case. Hines appealed.

The burden of proof in dependency-neglect proceedings, including reviews and permanency-planning hearings, is preponderance of the evidence. Ark. Code Ann. § 9-

27-325(h)(2)(B) (Supp. 2011). The standard of review is de novo, but we will not reverse unless the circuit court's findings are clearly erroneous. *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, 385 S.W.3d 367. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

Hines generally argues that the court erred in finding that the children could not be safely returned to her and that the court's finding was based on "fear" surrounding her mental illness. Hines asserts that she has a home, a steady income (from disability), and was showing no signs of hallucinations or hearing voices. She also contends that she was "making an all-out effort on her own to improve her mental condition" and that DHS did not assist her in transportation to her therapist as required by the case plan. She claims that this is the "same case" as *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, in which this court reversed a termination of parental rights based on a lack of evidence of adoptability. Hines also cites *Benedict v. Arkansas Department of Human Services*, 96 Ark. App. 395, 242 S.W.3d 305 (2006), another termination-of-parental-rights case, in which this court reversed on best-interest grounds. She concludes that it was not in the children's best interest to be placed with her mother "when there is no supported evidence in the record that the appellant has ever placed her children in harm's way or done any actual harm to her children."

In response, DHS first argues that Hines failed to raise any argument below that DHS had not provided transportation services, nor did she appeal any of the court's prior findings that DHS had made reasonable efforts to provide services. DHS also says that the

evidence showed that the children could not be returned to Hines for the various reasons the circuit court heard.

We agree that any argument regarding transportation services was not properly preserved for this court's review. More important, given the evidence presented and the history of the case, we hold that the circuit court did not clearly err in granting custody of the children to Hines's parents for the reasons the circuit court discussed in its written order. We therefore affirm the award of permanent custody.

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Wilson Law Firm, P.A.*, by: *E. Dion Wilson*, for appellants.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.