Cite as 2021 Ark. App. 271

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-20-347

| | |
|---|---|
| MARY CLOIRD              APPELLANT<br><br>V.<br><br>JOSEPHINE YOUNG, ARKANSAS DEPARTMENT OF HUMAN SERVICES, AND MINOR CHILD<br>             APPELLEES | **Opinion Delivered** May 26, 2021<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35JV-19-287]<br><br>HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

Mary Cloird appeals the Jefferson County order awarding permanent custody of her then two-year-old grandson, JD, to the appellee, Josephine Young. Mary is JD's paternal grandmother; Josephine is JD's maternal grandmother. On appeal, Mary argues that placing JD with Josephine instead of with her was not in JD's best interest. We affirm.

The Arkansas Department of Human Services (DHS) became involved with this family when it removed JD from the custody of his father, Jeremy Scott. Jeremy had been drinking and driving and crashed into a tree, killing JD's mother, Pamela Suggs. JD was unrestrained in his mother's lap at the time of the crash. Jeremy was later charged with second degree murder, endangering the welfare of a minor, and domestic battery. Both Josephine and Mary were involved with the case from the beginning, and both offered their homes as available custodial placements. At the probable-cause hearing held on September

12, 2019, the circuit court placed JD in Josephine's temporary custody. Jeremy was not permitted to have contact with JD pursuant to a no-contact order in his criminal case.

On October 29, 2019, Josephine filed an amended petition seeking permanent custody of JD. In it, she alleged that she had spent a significant amount of time in the home with JD, she had participated significantly in his care and supervision, and there was a "strong bond" between them. Two days later, Mary filed a motion to intervene and a motion for a grant of permanent custody, asserting that there was also a strong bond between her and JD.

A CASA report was filed three days later. It provided that Josephine's home was appropriate and that JD is "in a home where he is loved and all of his needs are met." CASA did not recommend permanent placement at the time, however, citing the need to await the completion of all home studies.

The court's adjudication order, entered on November 5, found that JD was dependent-neglected based on abuse, neglect, and parental unfitness and cited Jeremy's decision to drive under the influence while knowing that JD was not appropriately restrained. DHS responded to Mary's and Josephine's petitions and argued that petitioning for intervention and permanent custody was premature when reunification with a parent was still a case goal. The court granted both Mary's and Josephine's petitions to intervene.

On December 17, Josephine petitioned for termination of reunification services to the father. She asserted that Jeremy had been charged in criminal court with murder in the second degree, child endangerment, and domestic battery in the second degree as a result of his actions that led to Pamela Suggs's death. Attached to this petition were home studies for both Mary and Josephine. Both home studies are positive, and both recommend Mary

2

and Josephine as potential placement candidates. The court held a review hearing on January 16, 2020, wherein it closed the case and granted permanent custody of JD to Josephine. The court stated:

> Because the child cannot be placed with either parent, the court looks to the grandparents for potential placement. The court finds that the paternal grandparents (Ira and Mary Cloird) are not an appropriate placement. Until yesterday, the father was residing with the [Cloirds]. The Court finds that it was a bad decision for the Cloirds to allow the father to live with them while they were also seeking placement of their grandchild (particularly when said grandchild is the subject of a No Contact Order against the father). In addition, Ms. Cloird made inconsistent statements in her testimony today when compared with the statements she gave to the [case]worker immediately after the mother was killed. The court believes Ms. Cloird's judgment was impaired and she would not provide for the best interests of [JD] due to her loyalties to her own son (Jeremy Scott). Further, the Court feels that if the [Cloirds] were granted permanent custody, the father would be right back in the [Cloird] home despite the no contact order that is in place. The [Cloird] home is not a suitable home for the minor child.
>
> The court is satisfied that it is in the best interests of the minor child that the maternal grandmother, Josephine Young, be granted permanent custody. The minor child has been placed with Ms. Young and has been doing well. Ms. Young has ensured that all his health and safety needs have been met. In addition, Ms. Young's home study was favorable. The Court finds that this is the most suitable and most appropriate placement for the minor child.

Mary has now appealed. On appeal, she asserts that sufficient evidence does not support the finding that placing JD in Josephine's permanent custody was in JD's best interest.

The burden of proof in dependency-neglect proceedings, including review and permanency-planning hearings, is by a preponderance of the evidence. Ark. Code Ann. § 9-27-325(h)(2)(B) (Repl. 2020). On appeal, the standard of review is de novo, but we will affirm the circuit court's findings unless they are clearly against the preponderance of the evidence. *Mosier v. Ark. Dep't of Hum. Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006). We give due regard to the circuit court's opportunity to judge the credibility of the witnesses,

3

and we will not reverse the circuit court's ruling in a dependency-neglect case unless the ruling was clearly erroneous. *Ark. Dep't of Hum. Servs. v. McDonald*, 80 Ark. App. 104, 91 S.W.3d 536 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

The juvenile code specifically provides that placing a juvenile in the permanent custody of a relative is a disposition option available to the court in dependency-neglect cases when such a disposition is in the child's best interest. Ark. Code. Ann. § 9-27-334(a)(2)(A). Specific statutes within the Juvenile Code permit a circuit court to grant permanent custody of a child at different dependency-neglect hearings. *E.g.*, Ark. Code Ann. §§ 9-27-315(a)(1)(B)(ii) (probable-cause hearing); 9-27-334(a)−(b) (disposition options after adjudication).

Mary's argument is, essentially, that given the competing requests for permanent custody of JD, the court weighed the evidence and credibility of witnesses incorrectly and should have picked Mary as the custodian. However, it is well settled that appellate courts will not reweigh the evidence on appeal, and credibility determinations are left to the circuit court. *Blasingame v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 71, at 6, 542 S.W.3d 873, 877. A de novo review supports a placement with Josephine. At the final hearing there was evidence that JD was doing well in Josephine's care, there was a favorable home study in place by CASA, and JD was in a loving home where all of his health and safety needs were met. Mary asks us to reweigh the evidence, which we will not do.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Robinson & Zakrzewski, P.A.*, by: *Luke Zakrzewski*, for appellant.

*McKissic & Associates, PLLC*, by: *Jackie B. Harris*, for separate appellee Josephine Young.

*Andrew Firth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.