

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-991

| | |
|---|---|
| JACQUELINE FERGUSON AND CHRIS FERGUSON<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered** May 11, 2016<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. JV-14-89]<br><br>HONORABLE BARBARA ELMORE, JUDGE<br><br>AFFIRMED |

**LARRY D. VAUGHT, Judge**

Appellants Jacqueline and Chris Ferguson appeal from the Lonoke County Circuit Court's permanency-planning and termination-of-parental-rights orders as to their adopted children, L.F.1 (DOB 9-22-08), L.F.2 (DOB 8-6-09), and Z.F. (DOB 9-7-10). The Fergusons argue that the trial court clearly erred in failing to follow the preferential goals in the permanency-planning statute, Arkansas Code Annotated section 9-27-338(c) (Repl. 2015), when it authorized adoption and termination of parental rights instead of placing custody of the children with Chris or with relatives. They contend that the trial court's erroneous findings in the permanency-planning order must be reversed, and because these findings led to the termination order, it too must be reversed. We affirm.

On April 3, 2014, the Arkansas Department of Human Services (DHS) petitioned for emergency custody of L.F.1, L.F.2, Z.F., and A.F.,[1] alleging neglect, parental unfitness, and physical abuse. An affidavit accompanying the petition alleged that DHS received a report that Jacqueline had beaten L.F.2 and Z.F. (four and three years old at the time) with a vacuum-cleaner attachment, that both boys had bruising that was getting worse, and that they both had black eyes.

In a second affidavit attached to the petition for emergency custody, Tanya Cross of the Arkansas State Police Crimes Against Children Division stated she investigated the report of abuse, which included interviews with Jacqueline and her children in their home. Cross stated that a vacuum-cleaner attachment was lying on a table and that Jacqueline admitted striking the boys with it. L.F.2 and Z.F. said their mom spanked them with a paddle or a spoon and that their mom hurt them. Z.F. stated that his mom had given him a black eye. L.F.1, L.F.2, and Z.F. stated that their mother sprayed them in the face and eyes with water, and Cross observed a spray bottle containing water. Cross also spoke with B.K., the Fergusons' foster child, and A.F., who was seventeen years old. They showed pictures they had taken of L.F.2 with welts and bruising all over his body. When A.F. questioned Jacqueline about the markings on L.F.2, she explained that they had been caused by an allergic reaction. B.K. reported to Cross that Jacqueline punished L.F.2 and Z.F. by "whipping" them, giving them extended time-outs (several hours or all day), pushing them to the floor, making them sleep on the floor or in the bathroom for wetting the bed, or making them sit on the bed or stand

---

[1] The Fergusons' daughter, A.F. (DOB 10-29-97), was named in the petition but was later dismissed from the case and is not a party to this appeal.

at the wall for hours. A.F. told Cross that she had witnessed Jacqueline spank the children in the past and was concerned for their safety. Cross stated that Dr. Karen Farst of Arkansas Children's Hospital and the University of Arkansas for Medical Sciences Department of Pediatrics, after seeing the pictures of the welts on L.F.2, opined that they were a result of an impact injury, not a rash, consistent with being struck with a vacuum-cleaner attachment and that L.F.2 had been abused. An ex parte order for emergency custody was entered.

An adjudication hearing was held on July 1, 2014, and the trial court found that L.F.1, L.F.2, and Z.F. were dependent-neglected based on Jacqueline's physical abuse of the children and Chris's failure to protect them.[2] The goal of the case was reunification, and the trial court ordered the Fergusons to comply with the case plan, which required, among other things, that they maintain stable housing, attend individual and family counseling, participate in visitation, submit to psychological evaluations, and complete parenting classes. Jacqueline was also ordered to attend anger-management and domestic-violence classes. The children were placed in the custody of provisional foster parents, Mindy and Edward Goldstick, the children's maternal aunt and uncle.

A permanency-planning hearing was held on April 21, 2015. Forensic psychologist Dr. Paul Deyoub testified that he performed evaluations on Jacqueline and Chris. Dr. Deyoub stated that Jacqueline showed a great deal of defensiveness; denied having any problems or weaknesses; and was rigid and unyielding. She adamantly denied having problems with or

---

[2] The Fergusons appealed the adjudication order. The order was affirmed in *Ferguson v. Arkansas Department of Human Services*, 2015 Ark. App. 99.

abusing her children despite them having been removed from her custody on that basis and her having been charged with domestic battery for abusing L.F.2.[3] Dr. Deyoub testified that

> [i]n this case, no meaningful therapy would do any good in an individual who saw no problem and no deficits . . . what is there to rehabilitate. In her mind there was nothing. And so . . . DHS and the Court would've been faced with an individual jumping through the hoops without any actual commitment to internal changes in herself. And so there is no basis for treatment or therapy. And that means that the children would not have been any safer in her custody . . . .

Dr. Deyoub's testing of Chris revealed that he was submissive, passive, and withdrawn; he lacked attachment; and he was socially inept. Chris deferred everything to his wife, including raising the children. Chris did not stand up for himself in his marriage, and Dr. Deyoub did not believe that Chris stood up for his children. Dr. Deyoub reported that Chris denied that Jacqueline abused their children and denied all evidence of abuse, including evidence presented by A.F., who stated that she witnessed and took pictures of the abuse. Dr. Deyoub opined that because of Chris's continued support of his wife, he would not benefit from treatment or therapy, which precluded him from parenting his children because he would not protect them. Based on his evaluations, Dr. Deyoub opined that the Ferguson case was a failed adoption and that reunification was impossible—opinions he testified that he rarely made. Finally, Dr. Deyoub stated that it would be psychologically damaging for the children to be placed with relatives who did not believe that they had been abused by their parent.

---

[3] Following the allegations of abuse raised in this juvenile proceeding, Jacqueline was later convicted by a Lonoke County jury of second-degree domestic battery of L.F.2 and sentenced to serve five years' imprisonment with an additional one-year enhancement for committing the offense in the presence of a child. She appealed her conviction, and it was affirmed in *Ferguson v. State*, 2015 Ark. App. 722, 479 S.W.3d 25.

Chris testified that he did not believe that Jacqueline had abused their children and that he intended to stay married to her. When she was released from prison, he wanted her to return home so that they could raise the children together. He added that if he was forced to choose between Jacqueline and his children, he would choose the children. Chris further testified that he was unable to care for the children on his own due to his work schedule. He had no objection to the Goldsticks having permanent custody of the children, but he did not want his parental rights terminated. He said that he had complied with the case plan and had benefited from services.

Jacqueline's brother, Edward Goldstick, and his wife, Mindy, testified that L.F.1, L.F.2, and Z.F. had been living in their home for the past year and were doing well. Edward stated that he did not know if the children had been abused because he did not see abuse and he did not see bruises on them. Mindy testified that she did not believe that Jacqueline had abused the children. Both Edward and Mindy wanted the children to be with Jacqueline and Chris but stated that they were willing to keep the children permanently.

DHS caseworker Christa Jones stated that Jacqueline and Chris complied with the case plan in that they attended counseling and classes, maintained stable housing, visited the children, and submitted to psychological evaluations; however, she said that they never acknowledged the physical abuse, which prevented them from remedying the conditions that caused removal and greatly affected their ability to reunify with the children. Christa testified that Chris's clear preference was to reunite with Jacqueline upon her release from prison and that he wanted both of them to care for the children. Christa was concerned that Chris would

not be able to protect the children from Jacqueline. She stated that DHS cannot force Chris to separate from Jacqueline; it was a decision Chris had to reach on his own.

Bridgett Rappold, the Lonoke County Department of Children and Family Services supervisor, testified that over the past twelve months, the Fergusons indicated to her that they were not going to change their position about the abuse allegation—they did not believe Jacqueline had abused the children. According to Bridgett, there were no other services DHS could have offered the Fergusons, and reunification was not possible because DHS could not ensure the safety of the children. Bridgett also stated that DHS cannot require a parent to admit fault. She stated that was something that needed to happen inherently within the parent.

At the conclusion of the permanency-planning hearing, the trial court changed the goal of the case to adoption and authorized DHS to file a petition to terminate the Fergusons' parental rights. The trial court found that while both Jacqueline and Chris had completed the services under the case plan, they had not benefited from the services because they had not "changed anything internally." Jacqueline continued to deny the abuse despite her felony conviction for battering L.F.2. Chris continued to deny that Jacqueline had abused the children. The court noted that Chris was unattached to the children, lacked foresight, stated that he never saw any bruises, ignored his wife's behavior, and denied that his daughter took pictures that illustrated the abuse. The trial court found that Chris's actions spoke louder than his words, and just because he testified that he would choose the children over Jacqueline did not mean that he would. The trial court found that Chris had already chosen Jacqueline over his children. As such, the court found that the children were not safe in the care of the Fergusons. The trial court also found that there were no additional services DHS could offer

the Fergusons; therefore, there was no need to provide an additional three months of services. Finally, the trial court found that although the Goldsticks had kept the children safe and had complied with court orders, it was not in the best interest of L.F.1, L.F.2, and Z.F. to remain in the Goldsticks' custody because the Goldsticks did not believe that Jacqueline had abused the children, which, according to Dr. Deyoub, was damaging to them.

Thereafter, DHS filed a petition to terminate the Fergusons' parental rights. At the conclusion of the termination hearing, the trial court granted DHS's petition, finding by clear and convincing evidence that termination was in the children's best interest and that DHS had met its burden of proving the grounds alleged. This appeal followed. The Fergusons do not challenge the sufficiency of the evidence supporting the termination decision. Instead, they contend that the termination order must be reversed because the trial court clearly erred in failing to follow the preferential goals in the permanency-planning statute. They contend this error led to the termination of their parental rights.[4]

The burden of proof in dependency-neglect proceedings, including permanency-planning hearings, is by a preponderance of the evidence. *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 522, at 4, 385 S.W.3d 367, 369–70 (citing Ark. Code Ann. § 9-27-325(h)(2)(B)). The standard of review is de novo, but the appellate court will not reverse unless the trial court's findings are clearly erroneous. *Id.*, 385 S.W.3d at 370. The appellate court, giving due regard to the trial court's opportunity to judge the credibility of the witnesses, will not reverse the trial court's ruling in a dependency-neglect case unless the ruling was clearly erroneous. *Id.*,

---

[4] DHS and the attorney ad litem make several arguments claiming that the Fergusons' appeal is procedurally barred; however, we hold that none have merit.

385 S.W.3d at 370. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 4–5, 385 S.W.3d at 370.

The Fergusons first argue that the court clearly erred in authorizing adoption and termination of their parental rights because pursuant to section 9-27-338(c)(3), Chris had undisputedly complied with the case plan and made significant and measureable progress toward remedying the issues that caused the removal of his children, entitling him to custody. He claims that the expectation of DHS and the trial court that he separate from Jacqueline in order to regain custody of his children was a requirement outside the bounds of the case plan and that he was not advised of that requirement until four weeks prior to the permanency-planning hearing. He adds that once he was advised of that requirement, his testimony was that he would choose the children over Jacqueline.

Chris is correct that he complied with the case-plan requirement in section 9-27-338(c)(3)(A)(i). However, the statute also requires Chris to establish that he was making significant, measurable progress toward achieving the goals of the case plan and toward remedying the conditions that caused the juveniles' removal. Ark. Code Ann. § 9-27-338(c)(3)(A)(i), (B)(i)(*a*). We hold that the trial court did not clearly err in finding that Chris failed to prove that he met these requirements by a preponderance of the evidence.

Dr. Deyoub testified that Chris was unattached and apathetic toward his children. He was passive and submissive to Jacqueline. He adamantly denied that Jacqueline had abused the children, despite direct evidence of abuse provided by A.F., and he supported Jacqueline throughout the case. Accordingly, Dr. Deyoub testified that he did not believe Chris would

SLIP OPINION

protect the children from Jacqueline and that he would not benefit from any further services. Dr. Deyoub concluded that reunification was impossible.

Likewise, DHS representatives Christa and Bridgett testified that Chris made it clear to them throughout the case that he did not believe Jacqueline had abused the children, that his position would not change, and that once Jacqueline was released from prison they would raise the children together. Christa and Bridgett testified that it was clear that Chris's preference was to remain married to Jacqueline, which was a concern because they feared that Chris would not be able to protect the children from Jacqueline, who adamantly denied having abused them. According to Christa and Bridgett, Chris's position prevented him from making significant, measurable progress toward remedying the conditions that caused removal and from reunifying with the children. They added that there were no services to be offered to Chris under these circumstances and that DHS could not force Chris to separate from Jacqueline; it had to be Chris's decision.

Chris emphasizes his testimony that he would leave Jacqueline in order to gain custody of his children. However, the trial court did not believe Chris. The trial court found that his actions spoke louder than his words and the fact that he said for the first time at the hearing that he would choose the children over Jacqueline did not mean that he would. The trial court believed that Chris had already chosen Jacqueline over his children. We give a high degree of deference to the trial court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 7, 434 S.W.3d 371, 375. Therefore, we hold that the trial court did not clearly err

9

in not authorizing the third preferential goal—Chris's custody of the children—pursuant to section 9-27-338(c)(3).

Alternatively, the Fergusons argue that the trial court clearly erred in authorizing adoption and termination under the fourth preferential goal set forth in section 9-27-338(c)(4). Pursuant to section 9-27-338(c)(4)(A)(i)–(ii), the trial court shall authorize a plan for adoption with the department's filing of a petition for termination of parental rights unless the juvenile is being cared for by a relative, the court finds that the relative has made a long-term commitment to the child and the relative is willing to pursue guardianship or permanent custody, and termination of parental rights is not in the best interest of the juvenile. The Fergusons contend that the trial court erred in not applying the exception within the fourth preferential goal because the evidence demonstrated that the Goldsticks were relatives who made a long-term commitment to care for the children and who were willing to pursue permanent custody of them.

The Fergusons ignore the best-interest finding that is required in order to satisfy the relative-placement exception. In the trial court's permanency-planning order, it found that termination of parental rights was in the best interest of the children and conversely that it was not in their best interest to be permanently placed in the Goldsticks' custody. This finding is not clearly erroneous. The Goldsticks did not believe that Jacqueline had abused the children, and Dr. Deyoub opined that it would be psychologically damaging to the children to be placed with relatives who did not believe that they had been abused by their parent. Based on this evidence, we hold that the trial court did not clearly err when it authorized the fourth preferential goal of adoption and termination of parental rights—rejecting the exception for

relative placement—pursuant to section 9-27-338(c)(4). Therefore, we affirm the trial court's permanency-planning order, and accordingly, its order terminating the Fergusons' parental rights.

Affirmed.

GLADWIN, C.J., and HIXSON, J., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellants.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.