JOSEPHINE LINKER HART, Associate Justice hRay Ellis (Ray) appeals from the circuit court’s order of permanency planning for his son, C.E. In that order, the circuit court denied his motion to consider the home study regarding C.E.’s paternal uncle, Josh Ellis, and Josh Ellis’s wife, Tamara Ellis (the Ellises, or individually, Josh and Tamara). Further, the court found that the continued custody of C.E. with the Arkansas Department of Human Services (ADHS) was in C.E.’s best interest and that the goal with respect to C.E. should be changed to adoption. The court allowed the foster parents to intervene in the case. On appeal, Ray contends that the circuit court clearly erred by denying his motion to place C.E. in the custody of the Ellises. Ray also contends that the circuit court clearly erred in changing the permanency goal to adoption. We reverse and remand the circuit court’s decision. Following C.E.’s birth on August 18, 2014, the circuit court entered on August 20, |¾2014, an ex parte order finding probable cause to believe C.E. was dependent-neglected. The court ordered C.E. to be removed from his mother, Kayann Tate, and placed in ADHS’s custody. The circuit court noted that Tate had tested positive for drugs and that her two other chib dren—who were not Ray’s biological children—were in foster care. On August 22, 2014, a second probable-cause order was entered declaring Ray as C.E.’s legal and biological father and ordered him to submit to counseling for domestic physical abuse. On November 12, 2014, the circuit court entered an adjudication order in which it found C.E. dependent-neglected, noting Tate’s drug use. The court ordered ADHS to continue its custody of C.E. and to make referrals for counseling for domestic abuse for Ray. The court also ordered a home study on “any interested relative.” On December 18, 2014, the court ordered a home study of the Ellises. The order noted that Josh Ellis is enlisted in the United States Army and resides in Germany. In a review order filed the same day, the circuit court found that Ray had partially complied with the case plan, noting that he had begun, but not yet completed, parenting classes, had attended his drug-and-alcohol assessment, had stable housing, and was employed. The court noted that he had not attended visitation since mid-November but that he had stated that his work as a truck driver had prevented him from attending visitation and parenting classes. According to the home study dated March 4, 2015, there were no allegations of spousal or child abuse or neglect against the Ellises in the Army Central Registry, and there were no negative findings from background checks conducted on the Ellis-es. It noted that the Ellises had undergone national-security background checks and were granted security |sclearances, attesting to them trustworthiness to access classified national-security information. Also, there were no significant findings or issues that would limit the Ellises’ ability to serve as guardians for C.E. The study noted that review of their medical records did not show any significant findings that would preclude the family from caring for C.E. Also, their house was orderly and there were no safety issues that had not been remedied, and the Ellises could obtain an apartment with an additional bedroom for C.E. under military guidelines. It noted that another minor was in the home who acted appropriately and that the Ellises had a pet dog of even temperament. The Ellises were described as having a stable and well-regimented routine. Josh had a balance between home and his duties; Tamara was involved in school and volunteer activities. Tamara’s mother, whose history had also been reviewed on the United States Army Registry and who had completed a comprehensive psychosocial history and assessment, served as a backup child-care provider for the family. The study concluded that the adults functioned as a unit and maintained a stable, supportive environment. The report noted that their minor child was a kindergarten student and that there were no concerns regarding discipline of the minor child. Further, the report indicated that the family was highly motivated to have C.E. join them. On July 27, 2015, Matthew and Stephanie Cole, C.E.’s foster parents, sought to intervene in the dependency-neglect case, stating that ADHS had placed C.E. in their foster home and that C.E. had resided there since August 24, 2014. The Coles sought to intervene because they wanted to adopt C.E. On August 3, 2015, Ray filed a motion urging the circuit court to consider and approve the home study and place C.E. with the Ellises. In response to 14the Coles, Ray sought to dismiss the Coles’ motion to intervene. He cited to statutory authority that in all custodial placements by ADHS in foster care or adoption, the court “shall” give preferential consideration to an adult relative over a nonrelated caregiver. Ray asserted that while he might “appreciate the care” that the Coles had provided C.E., that care did not give the Coles the “right to adopt the minor child.” He further asserted that the Coles had “confused their role as foster parents and now seek to adopt the minor child.” On August 28, 2015, the court held a permanency-planning hearing for C.E. At the hearing, it was noted that the court had not conducted a review hearing on C.E.[1] The record shows that a review order regarding C.E. was entered December 18, 2014, and that there was not a six-month review hearing afterward. The court first considered the Coles’ motion to intervene. Initially, the court denied the motion to intervene, stating that it was premature, but that the court would readdress the issue if the case goal later became adoption. Patricia Herring, the ADHS caseworker assigned to the case, testified that ADHS | ^recommended that C.E. be placed in the custody of the Ellises, stating that it would be in C.E.’s best interest. She noted that when there is an available relative, ADHS places children 'with the relatives. In its order filed September 14, 2015, the court ordered that C.E. was to remain in his foster home with the Coles. The court changed C.E.’s case goal to adoption. The court granted the Coles’ motion to intervene. The court denied the motion to consider the home study. In a subsequent order, the court ordered that ADHS continue to provide reunification services to Ray, with the exception of visitation, pending any hearing on the termination of parental rights. The court reserved the issue of visitation for a future hearing. The circuit court certified its orders as final and thus appealable This court reviews findings in dependency-neglect proceedings de novo, but the circuit court’s findings will not be reversed unless the findings are clearly erroneous. Ponder v. Ark. Dep’t of Human Servs., 2016 Ark. 261, at 2, 494 S.W.3d 426, 427. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. Id. at 2-3, 494 S.W.3d at 427. While we give due deference to the circuit court’s determination of the credibility of the witnesses and the weight to be given their testimony, the circuit court’s conclusions of law are given no deference. Id. at 3, 494 S.W.3d at 427, On appeal, Ray argues that the circuit court’s decision acts as a severance of natural family ties. He contends that the court’s denial of the motion to place C.E. with the Ellises violated the state’s public policy “[t]o preserve and strengthen the juvenile’s family ties when | rjt is. in the best interest of the juvenile.” Ark. Code Ann. § 9-27-302(2)(A) (Repl. 2015). He further contends that the circuit court failed to follow the statutes giving relatives preferential consideration for placement of children, specifically Arkansas Code Annotated section 9—27—355(b)(1), and Arkansas Code Annotated section 9-28-105. Further, Ray asserts that, the permanency-planning statute, Arkansas Code Annotated section 9—27—338(c)(3), provides that placement of the child with a custodian, such as the Ellises, has priority in the statutory scheme as compared to changing the. goal to adoption, which is a lesser preference. Ray argues that if “the circuit court had placed C.E. in the relative’s custody as required by law and as requested prior to the permanency planning hearing, then C.E. would have been in the custody of a relative,” which again is a higher preference under the statutory scheme than adoption. Ray asks that this court reverse the order of the circuit court, remand the case for further proceedings, and instruct the circuit court to give C.E.’s relatives preferential consideration and comply with the statutory preference to authorize a plan to place C.E. with a relative. In response, the ad litem asserts that adoption was an appropriate goal because C.E. has been with the Coles, the foster parents, for one year, and that during that time, C.E. has bonded with them, and they want to adopt C.E. The ad litem cites to testimony from Billie Williams, a program assistant with ADHS, that C.E. had developed a strong bond with the Coles and that his needs are being met in the foster home. The ad litem also cites to testimony from Kim Wilson, an ADHS foster-care supervisor, to the effect that she did not have any concerns about the Coles’ care of C.E. and that, while ADHS was recommending placement |7with the Ellises, it would also be in C.E.’s best interest to remain with the Coles. The ad litem also notes that C.E. has never known the Ellis-es, who are stationed in Germany. The ad litem suggests that according to cases decided by the Arkansas Court of Appeals, the statutory preference for relative placement comes into play only at the initial placement of the minor. Finally, the ad litem cites Arkansas Code Annotated section 9-27-338(c), the statute governing permanency-planning proceedings, and asserts that to place C.E. with the Ellises, the circuit court was required to make requisite findings, which it did not do. In its brief, ADHS argues that the preference for relative placement in Arkansas Code Annotated sections 9-27-355 and 9-28-105 controlled this case. As for the cases from the Arkansas Court of Appeals, ADHS notes that those cases were decided in the context of termination of parental rights, while this case involves a request for placement with a relative made before the case goal was changed to adoption. ADHS further asserts that there was no evidence suggesting that it would not be in C.E.’s best interest to be placed with the Ellises, and the circuit court instead granted the foster parents a de facto preference for placement over a fit biological relative. Arkansas Code Annotated section 9-27-355(b)(1) provides that “[a] relative of a juvenile placed in the custody of the Department of Human Services shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the best interest of the juvenile to be placed with the relative caregiver.” Similarly, Arkansas Code Annotated section 9-28-105 provides as follows: In all custodial placements by the Department of Human Services in foster care or adoption, preferential consideration shall be given to an adult relative over a|snonrelated caregiver, if: (1) The relative caregiver meets all relevant child protection standards; and (2)' It is in the best interest of the child to be placed with the relative caregiver. We are persuaded by the arguments of Ray and ADHS that the circuit court’s findings áre clearly erroneous. There were numerous errors that occurred in this case. On December 18, 2014, the date on which the only review hearing was held, the court ordered a home study of the Ellises. The home study, dated March 4, 2015, did not show anything to suggest that it would not be’in C.E.’s best interest to be placed with the Ellises, nor was any other evidence adduced at the permanency-planning hearing to show that the Ellises were unfit. Under Arkansas Code Annotated section 9-27-337, the court “shall review” all cases every six months when the juvenile has been placed by the court in the custody of the Department of Human Services. It was clear error for the court not to hold the hearing and it was equally incumbent on ADHS, parent-counsel, and most importantly, the ad litem to demand such hearing. Had the hearing been held before the end of June, the court would have had the completed and approved" home study to consider along with the statutory preference for relative placement as set out in Arkansas Code Annotated section 9—27—355(b)(1). Instead, the child remained in foster care with the foster parents, and on July 27, 2015, the Coles sought to intervene because they wanted to adopt C.E. On August 3, 2015, Ray filed a motion urging the circuit court to consider the home study. Instead, the circuit court proceeded with a permanency-planning hearing at which it denied the motion to consider placement with the Ellises and further granted the foster family’s motion to intervene. |9We cannot countenance the failure to apply the General Assembly’s public policy of strengthening familial bonds and its statutory direction to prefer an adult relative placement over a nonrelated caregiver in all custodial placements by ADHS in foster care or adoption. While a circuit court may raise considerations relating to permanency planning during a review hearing, in this instance, the foster family’s motion to intervene occurred after the time for a review hearing had passed. If a review hearing had been timely held, the considerations of the foster family and their extended care of C.E. would not have come into play, and the circuit court would have applied the statutory preference for relative placement. Moreover, contrary to the ad litem’s argument, it simply cannot be the law that-.strong bonds with a foster family can defeat .the statutory preference for relative placement. If that were the case, then parents and relatives would always be at risk of losing permanent custody of a child in circumstances in which an infant resided with a foster family that provided good care for an extended period of time. The circuit court erred by failing to conduct the mandatory review hearing and apply the statutory preference for relative placement to the Ellises upon receipt of the satisfactory home study, or consider it upon the motion for approval of the home study and placement with them. Thus, we need not consider the preferences outlined in the permanency-planning, statute, Arkansas Code Annotated section 9-27-338(c), because when the matter eventually came before the court, its priority was to conduct the statutory review hearing and consider the relative placement, and only then should the court have considered permanency planning. Finally, the ad litem’s argument that the statutory preference applies only to the initial | ^placement is clearly wrong. Nowhere in section 9-27-355(b)(1) is'there a limit to “initial placement.” To the extent that the court of appeals has said this in Davis v. Arkansas Department of Human Services, 2010 Ark. App. 469, 375 S.W.3d 721 and other cases, we overrule them. Accordingly, we reverse and remand the circuit court’s decision. We conclude that, on remand, ADHS must determine the continued accuracy of the March 4, 2015 home study. Further, the circuit court should then hold a hearing at which it considers the home study of the Ellises, ADHS’s recommendation regarding placement with the Ellises, and the General Assembly’s statutory preference stated in Arkansas Code Annotated sections 9-27-355(b)(1) and 9-28-105 that directs a preference for placement of a minor child with his or her relatives, and determine the best interests of C.E. in light of the statutory preference for relative placement.[2] Reversed and remanded; court of appeals opinion vacated. Danielson, J., dissents. . Arkansas Code Annotated section 9-27-337 (Repl. 2015) provides, in part, as follows: (a)(1) The court shall review every case of dependency-neglect or families in need of services when: (A) A caseworker assigned to the juvenile is placed by the court in the custody of the Department of Human Services or in another-out-of-home placement until there is a permanent order of custody, guardianship, or other permanent placement for the juvenile; or (B) A juvenile is returned to the parent from whom the child was removed, another fit parent, guardian, or custodian and the court has not discontinued orders for family services. (2)(A) The first six-month review shall be held no later than six (6) months from the date of the original out-of-home placement of the child and shall be scheduled by the court following the adjudication and disposition hearing. (B) It shall be reviewed every six (6) months thereafter until permanency is achieved. . The dissenting justice sprinkles false and misleading assertions throughout his opinion. Contrary to his claim, the statutory preference for relative placement was raised below, ruled on, and argued on appeal. In contrast, the issues he argues relating to the permanency-placement statute were not even argued on appeal. Rather, he adopts an analysis that was created in toto by the Arkansas Court of Appeals in its opinion, which we vacated. Finally, as noted in this opinion, and contrary to the dissenting justice’s ássertion, C.E.’s best interests will be considered on remand.