

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-1119

| | |
|---|---|
| ERNEST ADKINS<br>APPELLANT | Opinion Delivered: April 12, 2017 |
| V. | APPEAL FROM THE MARION<br>COUNTY CIRCUIT COURT<br>[NO. 45JV-15-9] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN | HONORABLE DEANNA SUE<br>LAYTON, JUDGE |
| APPELLEES | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Ernest Adkins (Ernest) appeals from the Marion County Circuit Court's permanency-planning order. In the order, the trial court changed the goal of the case to termination of parental rights and adoption. On appeal, appellant generally contends that the trial court erred in changing the goal of the case. We reverse and remand.

On May 1, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of I.A. (DOB 12-22-2006) and D.A. (DOB 9-5-2012). In the affidavit attached to the petition, DHS stated that it removed the children from the home after it received a referral that the children's parents, Alisha Adkins (Alisha)[1] and Ernest, were using drugs while caring for the children. During an investigation, DHS discovered that the children lived with both parents and with their maternal grandmother,

---

[1]Alisha is no longer a party to this appeal, as her appeal was dismissed as moot by this court on February 1, 2017.

Pearl Zimmerman (Pearl). Pearl stated that the family had moved into her home to take care of her because she had breast cancer; yet, she stated that she was unable to proceed with chemotherapy treatments because she had to take care of the children. Pearl suspected that Alisha and Ernest were using drugs. I.A. confirmed that her parents used drugs and that her parents got "really mean" when using drugs. Alisha admitted to the investigator that she had used drugs. The trial court found probable cause existed for the removal. An adjudication hearing was held on June 30, 2015, and the trial court found that the children were dependent-neglected. The trial court set the goal of the case at that time to reunification with a concurrent plan for relative placement.

A review hearing was held on August 12, 2015, and the trial court found that the case plan was moving toward an appropriate permanency plan. However, the trial court additionally found that the parents had not been complying with the case plan at that time and ordered that Pearl be considered for placement. In the October 28, 2015 review hearing, the trial court found that Alisha still had not complied with the case plan, other than to attend visitation and submit to drug screens, and that Ernest still had not complied with the case plan, other than to attend visitation, submit to drug screens, and obtain employment. Then, at the February 2016 review hearing, the trial court again found that the parents had only minimally complied with the case plan.

A permanency-planning hearing was held on April 20, 2016. Only Jennifer Matney, the family-service-worker supervisor, testified at the hearing. The children were nine years old and three years old at the time of the hearing. She explained that they were currently placed together with their aunt in a provisional foster home. She testified that the children

2

were doing well and that their needs were being met.[2] Although the goal of the case had been reunification, Matney requested that the goal be changed to termination of parental rights because the parents had made only minimal progress in their case plan. Matney testified that the maternal grandmother, Pearl, had been exercising visitation with the children and that supervised visitation would take place at Pearl's home when the children's parents visited. Although Pearl tested positive for drugs during her drug screens, Matney explained that Pearl was undergoing treatment for cancer and that the treatment would "trip her drug screens." Therefore, Matney explained that DHS verified that Pearl had prescriptions for the drugs found in her system and that she did not have any concerns that Pearl was using illicit drugs at that time. Matney testified that Pearl had just begun to have extended visitation with the children and that Pearl was a potential candidate for adoption or relative placement. Matney further acknowledged that the children had a strong bond with their parents and with their grandmother.

After Matney's testimony, both parents joined in asking for a directed verdict and orally argued why the goal of the case should remain as reunification. Alisha specifically argued that the permanency-planning statute listed relatives as a preference. She argued that she did not understand why there was any reason to "employ a termination because permanency can actually, indeed, be achieved faster for a child with relatives rather than termination. Because we have relatives sitting right in the courtroom today." Alternatively, she requested that a separate placement hearing be held to consider placement with Pearl if the goal was changed to termination. The attorney ad litem acknowledged that the children

[2]The aunt's name is not included in the record.

had been placed with their aunt and uncle in provisional foster care. However, the attorney ad litem opined that termination would be in the best interest of the children. The trial court denied the motions for directed verdict and changed the goal of the case to termination and adoption.

In the amended permanency-planning order filed on October 11, 2016, the trial court made the following relevant findings:

> 3. The Court, mindful of the available permanency planning dispositions and in accordance with the best interest, health and safety of the juvenile, does hereby determine the goal of the case shall be:
>
> Authorizing a plan for adoption with the department filing a petition for termination of parental rights because:
>
> (A) *The juvenile is not being cared for by a relative* and termination of parental rights is in the best interest of the juvenile;
>
> (B) The Department has not documented in the case plan a compelling reason why a petition for termination of parental rights is not in the best interest of the juvenile;
>
> (C) The Department has provided to the family of the juvenile, consistent with the time period in the case plan, such services as the Department deemed necessary for the safe return of the juvenile to the juvenile's home if reunification services were required to be made to the family; and
>
> (D) The Court finds that the permanent goal for the juvenile shall be a plan for adoption with the Department filing a petition for termination of parental rights. Having set the goal to be adoption, the Court has determined that parent counsels shall continue to represent the parents for termination purposes.
>
> . . . .
>
> 8. The Court finds that the parent(s) HAVE NOT complied with the case plan and the orders of this Court, specifically, parental drug use continues to be an issue in this case. The mother has not completed drug treatment and the Court has nothing before it to show she is pursuing recovery or addressing her addiction. The Court notes that Mr. Adkins has not been a reliable support system. Moreover, the mother has an outstanding arrest warrant that undercuts any notion of maternal

stability.  The parents have not provided proof of parenting classes, employment, or stable housing.  The parents have not been available to the Department and have not allowed the Department to inspect their home.  The Court also notes the parents have left much wanting in regards to providing for the juveniles' basic needs.  [I.A.], based on her age, knows her parents are using drugs and [D.A.] has special needs that the Court believes may be caused or exacerbated by the lack of parental stability in this case. . . .

9.  The Court finds and orders:

A.  That the parents have not remedied the circumstances that caused removal.

B.  That the parents have not made substantial, measurable progress towards achieving reunification.

C.  The Department and the parents shall go to the parents' home today to allow the Department to inspect the home.

D.  Mrs. Zimmerman shall submit to a hair follicle test.

E.  An additional special relative placement hearing will not be scheduled at this time.  Court has considered relatives available at each hearing including this one and relative placement cannot be made at this time.

10.  The Court finds that the visitation plan is appropriate for the juvenile(s) and the parent(s).  Relative placement will be considered again at the next hearing.

(Emphasis added.)  The trial court attached a Rule 54(b) certification to the order pursuant to the Arkansas Rules of Civil Procedure (2016), and this appeal followed.

## I.  *Standard of Review*

We review findings in dependency-neglect proceedings de novo, but the trial court's findings will not be reversed unless the findings are clearly erroneous.  *Ellis v. Ark. Dep't of Human Servs.*, 2016 Ark. 441, 505 S.W.3d 678.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed.  *Id*.  While

we give due deference to the trial court's determination of the credibility of the witnesses and the weight to be given their testimony, the circuit court's conclusions of law are given no deference. *Id.*

## II.  *Arkansas Code Annotated Section 9-27-338(c)(4)*

Appellant contends on appeal that the trial court erred in changing the goal of the case to termination and adoption.  Appellant argues that, at the time of the permanency-planning hearing, the children were placed with their aunt, they were receiving extended visitation at their grandmother's home, and both the aunt and the grandmother had made long-term commitments to the children and were willing to pursue guardianship or permanent custody.  Therefore, appellant argues that the trial court erred in finding that the aunt or the grandmother failed to satisfy the requirements of Arkansas Code Annotated section 9-27-338(c)(4)(A)(i) (Repl. 2015).  He further argues that it is not in the children's best interest to terminate parental rights because (1) the children already have permanency in their current placement, (2) the children would suffer a severe negative impact if they are stripped of their bond with their parents, and (3) the children would suffer a severe negative impact if they are stripped of their bond with their grandmother.

A permanency-planning hearing under Arkansas Code Annotated section 9-27-338(a)(1) is held to finalize a permanency plan for the children.  Section 9-27-338 provides in pertinent part

> (c) At the permanency planning hearing, based upon the facts of the case, the circuit court shall enter one (1) of the following permanency goals, listed in order of preference, in accordance with the best interest, health, and safety of the juvenile:
>
> (1) Placing custody of the juvenile with a fit parent at the permanency planning hearing;

. . . .

(4) *Authorizing a plan for adoption with the department's filing a petition for termination of parental rights unless:*

    (A) *The juvenile is being cared for by a relative and the court finds that:*

        (i) *Either:*

            (a) *The relative has made a long-term commitment to the child and the relative is willing to pursue guardianship or permanent custody; or*

            (b) *The juvenile is being cared for by his or her minor parent who is in foster care; and*

        (ii) *Termination of parental rights is not in the best interest of the juvenile;*

    (B) The department has documented in the case plan a compelling reason why filing such a petition is not in the best interest of the juvenile and the court approves the compelling reason as documented in the case plan; or

    (C)(i) The department has not provided to the family of the juvenile, consistent with the time period in the case plan, such services as the department deemed necessary for the safe return of the juvenile to the juvenile's home if reunification services were required to be made to the family.

        (ii) If the department has failed to provide services as outlined in the case plan, the court shall schedule another permanency planning hearing for no later than six (6) months[.]

(Emphasis added.)

DHS failed to address in its brief appellant's specific argument that the trial court erred in changing the goal of the case because it found that the children were not being cared for by a relative when they were, in fact, being cared for by their paternal aunt. Instead, DHS argued that the trial court's best-interest findings were not clearly erroneous because the parents failed to comply with the case plan. Appellant does not dispute the trial

court's findings that he was not in full compliance with the case plan. Instead, he argues that the trial court failed to follow the preferential goals in the permanency-planning statute under section 9-27-338(c)(4). We agree.

Here, Matney testified that the children were being cared for by their aunt in provisional foster care, and this testimony was undisputed. In fact, the attorney ad litem confirmed in closing argument at the permanency-planning hearing that the children were living with their aunt and uncle. Furthermore, there was no testimony that this placement needed to change or that the aunt was unwilling to continue to care for the children. Instead, Matney testified that the children were doing well and that their needs were being met. Despite this undisputed testimony, the trial court specifically found that changing the goal of the case to termination of parental rights and adoption was appropriate because "*[t]he juvenile is not being cared for by a relative.*" (Emphasis added.) That is incorrect; the juveniles were being cared for by a relative—their paternal aunt. Therefore, we hold that the trial court's finding that the children were not being cared for by a relative was clearly erroneous.

Even though the trial court could still find that termination of parental rights and adoption is in the children's best interest and appropriate under section 9-27-338(c)(4), the record before us does not indicate that the trial court considered the additional factors enumerated under section 9-27-338 because the trial court erroneously found that the children were not being cared for by a relative. *See generally Ferguson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 258, 492 S.W.3d 880. Thus, we must reverse and remand for further proceedings consistent with this opinion. Because we reverse and remand, we do not need to address appellant's remaining arguments.

Reversed and remanded.

GLOVER, J., agrees.

BROWN, J., concurs.

*Worlow Law, LLC*, by: *Jacob Worlow*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.