2017 Ark. App. 680

Dustin ROSENBAUM, Appellant

v.

ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees

No. CV–17–393

Court of Appeals of Arkansas, DIVISION II.

Opinion Delivered: December 13, 2017

Lightle, Raney, Streit & Streit, LLP, Searcy, by: Jonathan R. Streit, for appellant.

Mary Goff, Office of Chief Counsel, for appellee.

Chrestman Group, PLLC, by: Keith L. Chrestman, attorney ad litem for minor children.

RAYMOND R. ABRAMSON, Judge

Dustin Rosenbaum appeals the Sharp County Circuit Court order terminating his parental rights to his child, L.A. On appeal, Rosenbaum argues that the circuit court erred in terminating his parental rights because there was an available and appropriate relative placement with his mother, Raven Traman. We affirm.

On September 5, 2015, L.A. was born while his mother, Alisa Allard,[1] was incarcerated in the Southeast Community Correction Center. The Arkansas Department of Human Services ("DHS") placed a seventy-two-hour hold on L.A., and on September 11, 2015, DHS filed a petition for emergency custody and dependency-neglect. The petition listed Rosenbaum and James Meeks as the putative fathers. On that same day, the circuit court entered an ex parte order for emergency custody. On September 15, 2015, the circuit court found probable cause for the emergency custody.

On October 6, 2015, the circuit court adjudicated L.A. dependent-neglected due to Allard being incarcerated at L.A.'s birth and also because Allard's other children had been adjudicated dependent-neglected. In the adjudication order, the court adjudicated Rosenbaum as the legal father pursuant to DNA testing results. The court ordered Rosenbaum to comply with the case plan, contact the DHS caseworker weekly, watch "The Clock is Ticking" video, participate in and complete parenting classes, obtain and maintain appropriate housing and employment, submit to ran-

1. The Sharp County Circuit Court order also terminated the parental rights of Allard; however, she is not a party to this appeal.

dom drug screens, and submit to a psychological evaluation.

On December 1, 2015, the court held a review hearing. The court found that Rosenbaum was in partial compliance with the case plan because he had watched "The Clock is Ticking" video and completed his psychological evaluation. However, he had not completed parenting classes or a drug assessment.

Further, on December 1, 2015, L.A.'s foster parents filed a motion to intervene and to consolidate cases. They informed the court that they had filed a petition for adoption of L.A. in the probate division of the circuit court on that day, and they asked the court to consolidate the cases. The circuit court set a hearing on the motion to intervene for February 9, 2016. On January 8, 2016, Rosenbaum's mother, Raven Traman, also filed a motion to intervene and for guardianship of L.A.

On February 9, 2016, the court held a review hearing. The court granted the foster parents' motion to intervene but reserved a ruling on Traman's motion to intervene pending a home study. The court further found that Rosenbaum still had not completed parenting classes or his drug assessment.

On June 7, 2016, the court held a review hearing. DHS introduced into evidence the results of Traman's home study and recommended that L.A. not be placed with Traman at that time. Christy Kissee, the family-service-worker supervisor, testified that she did not recommend placement with Traman due to Traman's lack of income. She noted that Traman's only income is her son Brandon's disability benefits. On cross-examination, she admitted that the home itself was adequate and appropriate for the child. However, she believed that Traman's lack of financial support prevented placement of L.A. with her. She further voiced concern of Traman's dependent behavior on Brandon.

Traman testified that she lives with Brandon and her nine-year-old grandson, of whom she has a guardianship. She explained that Rosenbaum had recently moved out of her home and into an apartment because she wanted to make room for L.A. and because Rosenbaum had tested positive for K2. She explained that she inherited her home from her mother and that Brandon pays her utility bills. She stated that Brandon's income is $653 per month and that amount is her total household income. She noted that she babysits on occasion and supplements that income. She testified that if the court restricted access between Rosenbaum and L.A., she would abide by the court's order. At the conclusion of the review hearing, the court declined to place L.A. with Traman at that time and again reserved a ruling on Traman's motion to intervene and for guardianship.

On September 7, 2016, the court held a permanency-planning hearing. Teresa Hollich, the DHS caseworker, testified that it was in L.A.'s best interest to be adopted by his foster parents. She explained that he had been in their home since September 11, 2015, less than week after his birth; that he is healthy and happy; and that the home is appropriate. She noted that Rosenbaum had not paid child support, had not been cooperative with DHS, and could not visit L.A. because of a failed drug test.

Allard, L.A.'s mother, testified that she wanted Traman to have custody of L.A. She testified that she had known Traman for thirteen years and that her home was appropriate for the child. She noted that she had attempted to arrange for Traman to pick up L.A. shortly after his birth. She did not believe it was in L.A.'s best interest to be adopted by his foster parents.

Traman again testified about her living situation and her income, which remained unchanged. However, she testified that she had applied for four jobs.

At the conclusion of the permanency-planning hearing, the court denied Traman's motion to intervene and for guardianship. The court was concerned with Traman's lack of income and her inability to disassociate herself with Rosenbaum. The court found Allard's testimony not credible because she appeared to be under the influence of a substance. The court entered a written order on the same day as the hearing. In the order, the court changed the goal of the case to adoption.

On December 16, 2016, DHS filed an amended petition for termination of Rosenbaum's parental rights. DHS alleged the failure-to-remedy ground,[2] the failure-to-support ground,[3] the abandonment ground,[4] the subsequent-factors ground,[5] and the aggravated-circumstances ground.[6] The court held a termination hearing on January 17, 2017.

At the hearing, Rosenbaum testified that he is currently in a drug-rehabilitation facility in O'Kean, Arkansas, and that he had been there for a little over a month. He explained that if he did not complete the drug rehabilitation, he could be sentenced to thirty-six months in prison. He asked the court to place L.A. with his mother until he is sober. In the alternative, he stated that he would relinquish his parental rights to his mother. He testified that he had completed online parenting classes, a psychological evaluation, and a drug assessment.

Hollich again testified that L.A. is doing well in his foster home. She noted that since the case had begun, Rosenbaum had four different homes and that he had failed to report criminal charges to DHS. She noted Rosenbaum had not maintained contact with DHS and that she had not spoken with him since September. His last visitation with L.A. was in June. She confirmed that he had completed a psychological evaluation and online parenting classes. She noted, however, that parents usually complete parenting classes at DHS, not online. As to placement with Traman, Hollich testified that she had concerns with Traman ceasing contact with Rosenbaum, and she also referenced the court's previous orders.

Following Hollich's testimony, Rosenbaum again asked the court to place L.A. in Traman's custody. The court stated that it had considered placement with Traman at the previous hearing and that it denied her motion to intervene and for guardianship because it did not believe she could cease contact between Rosenbaum and the child. However, the court reconsidered the placement in the event there had been a change in her circumstances.

Traman testified that the court previously denied placement with her because her income was too low. She stated that her income had not changed, but she believed she had an appropriate home for the child. She also believed that Rosenbaum and L.A. should maintain contact and that Rosenbaum had improved his lifestyle.

Following Traman's testimony, the court orally ruled to terminate Rosenbaum's parental rights. As to placement with Traman, the court reconsidered placement and

---

2. Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(b)* (Supp. 2017).

3. Ark. Code Ann. § 9–27–341(b)(3)(B)(ii)*(a)*.

4. Ark. Code Ann. § 9–27–341(b)(3)(B)(iv).

5. Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

6. Ark. Code Ann. § 9–27–341(b)(3)(B)(ix).

again denied the request. The court cited its concern with her income and her inability to protect L.A. from Rosenbaum.

On February 17, 2017, the court entered a written order terminating Rosenbaum's parental rights. The court found that the failure-to-support ground, the failure-to-remedy ground, the subsequent-factors ground, and the aggravated-circumstances ground supported termination. As to placement with Traman, the court stated,

> On February 9, 2016, the Court heard [Traman's] motion to intervene and for guardianship, reserved a ruling, and ordered the department to prepare a home study on Raven Traman. The home study was considered by the Court at two separate hearings. On June 7, 2016, the Court heard extensive testimony, and reserved a ruling for the September 7, 2016 [p]ermanency planning hearing. On September 7, 2016, the Court, considering relative preference ... denied that placement as not being in the best interests of the child [for] two issues, one being the grandmother's lack of any source of income to support the child, and second, concerns of the Court regarding the willingness of the grandmother, Raven Traman, to keep the child away from Dustin Rosenbaum. The Court notes that throughout this proceeding Raven Traman has defended Dustin Rosenbaum and made excuses for his behavior.... Based on Raven Traman's testimony as of January 17, 2017, and admission that circumstances have not changed, the Court once again considering the appropriate relative preferences, finds that Traman is not an appropriate caregiver and placement with Raven Traman is not in the best interest of the child and denies placement.

Rosenbaum appealed the termination order to this court.

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.* The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96.

In this case, Rosenbaum does not challenge the circuit court's finding of a statutory ground for termination. He argues only that the court erred in terminating his parental rights because there was an available and appropriate relative placement with Traman. He asserts that the court's refusal to place L.A. with Traman violates the Juvenile Code's preference for relative placement. He cites Arkansas Code Annotated section 9–28–105 (Repl. 2015), which states, "In all custodial placements by the Department of Human Services in foster care or adoption, preferential consideration shall be given to an adult relative over a nonrelated caregiver if: (1) [t]he relative caregiver meets all

relevant child protection standards and (2) [i]t is in the best interest of the child to be placed with the relative caregiver." He also cites Arkansas Code Annotated section 9–27–355(b)(1)(Repl. 2015), which provides that "[a] relative of a juvenile placed in the custody of the Department of Human Services shall be given preferential consideration for placement if the relative caregiver meets all relevant child protection standards and it is in the best interest of the juvenile to be placed with the relative caregiver." He argues that this case is similar to *Ellis v. Arkansas Department of Human Services*, 2016 Ark. 441, 505 S.W.3d 678.

In *Ellis*, the father appealed a permanency-planning order, denying his motion to consider placement of his child in the home of his brother, the child's uncle. *Id.* The circuit court did not conduct the mandatory six-month review hearings under Arkansas Code Annotated section 9–27–337 and refused to consider the uncle's satisfactory home study, despite DHS recommending placement of the child with the uncle. *Id.* Instead, the circuit court ordered that the child remain in his foster home and changed the goal of the case to adoption. *Id.* On appeal, the father asserted that the circuit court's refusal to place the child with the uncle violated the state's public policy to preserve and strengthen the juvenile's family ties when it is in the best interest of the child. *Id.* As in this case, the father cited Arkansas Code Annotated section 9–27–355(b)(1) and Arkansas Code Annotated section 9–28–105. *Id.* Our supreme court agreed with the father and held that the circuit court erred by not considering the home study and by not applying the statutory preference for rela-

tive placement upon receipt of the satisfactory relative home study. *Id.*

We find *Ellis* distinguishable from the instant case. In this case, the court held the proper review hearings; and it considered placement with Traman on multiple occasions after receiving the results of her home study and after hearing testimony from DHS and Traman. However, the court denied placement with Traman because she did not have any income, relied solely on her son's disability benefits, and wanted to maintain contact between L.A. and Rosenbaum.[7] Thus, this case is unlike *Ellis*. Further, given this evidence, we cannot say that the court's finding was clearly erroneous. Accordingly, we affirm the termination of Rosenbaum's parental rights.

Affirmed.

Murphy and Brown, JJ., agree.

---

7. Although Traman testified at the June 7, 2016 review hearing that she would abide by the court's order restricting access between Rosenbaum and L.A., she testified at the termination hearing that she believed that L.A. should maintain contact with Rosenbaum. We defer to the circuit court to resolve conflicts in the evidence. *Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 821, 373 S.W.3d 361.