Cite as 2019 Ark. App. 403

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-381

| | |
|---|---|
| SUMER STOWELL<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** September 25, 2019<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-16-374]<br><br>HONORABLE ANNIE POWELL HENDRICKS, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Sumer Stowell appeals the Sebastian County Circuit Court order permanently placing her children with their father, Curley Holden. On appeal, Stowell argues that the circuit court erred by finding that the placement was in the children's best interest. We affirm.

On August 26, 2016, the Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect concerning C.H.1 and C.H.2. The petition listed Stowell as the mother and Holden as the legal father, and it noted that the children resided with Stowell. In the affidavit attached to the petition, DHS alleged that (1) Stowell's stepfather had sexually abused the children in January 2016 and (2) Stowell's son from another relationship, J.O., had sexually abused the children in January 2016 and again in August

2016. DHS proposed a safety plan that would allow the children to remain in Stowell's custody.

Also on August 26, the ad litem filed a petition for emergency custody and dependency-neglect and a motion for no reasonable efforts. The ad litem alleged that removal of the children from Stowell's custody was necessary to protect their health, safety, and physical well-being. The ad litem further alleged that Stowell had tested positive for methamphetamine and THC on or about August 17, 2016. The ad litem requested that the court find that DHS had failed to provide reasonable efforts to protect the children and to prevent the need for their removal. The court entered an ex parte order of emergency custody but reserved a ruling on the no-reasonable-efforts issue.

The court held a probable-cause hearing on August 31, 2016, and it entered an order on October 25. The court found probable cause for the emergency custody and that DHS had made reasonable efforts to prevent the removal of the children.

On October 31, the court held an adjudication hearing and adjudicated the children dependent-neglected on the bases of parental unfitness, substance abuse, and sexual abuse. The court found that both Stowell and Holden were offenders with respect to the finding of parental unfitness. The court noted that Holden previously had a true finding for physical abuse of his nephew in his custody and that the child was in DHS custody as a result of the finding.

The court held a review hearing on February 8, 2017. The court found that the parents had some compliance with the case plan. As to Stowell, the court found that she had completed her drug-and-alcohol assessment but had not completed treatment. The

court noted that she had housing and limited income and that she had regularly visited the children. As to Holden, the court found that he had stable income, housing, and transportation. The court ordered that he complete a psychological evaluation and any recommended treatment, complete parenting-without-violence classes, resolve his outstanding criminal charges, and comply with the terms and conditions of any sentences.

On May 24, the court held a permanency-planning hearing. The court authorized DHS to obtain a permanent custodian and noted that Holden had a good relationship with the children and had visited regularly and appropriately. The court further noted that Holden was attending parenting-without-violence classes as required by his sentence for his conviction of physical abuse of his nephew. The court found his living arrangements "unconventional with an estranged wife and an estranged girlfriend, with whom he has two small children and is pregnant at this time." As to Stowell, the court noted that she had tested positive for methamphetamine and THC and that she had moved without informing DHS. The court further noted that Stowell's diagnostic impression included bipolar disorder and anxiety disorder, and it found that she had acted inappropriately during visitations with the children.

The court held review hearings on August 23 and October 27. The court found that Holden had a good relationship with his children, visited them regularly and appropriately, and completed his psychological evaluation and parenting-without-violence course. The court found that the children could not be safely reunified with Stowell and authorized DHS to increase Holden's visitation with the children, including a trial home placement.

3

On March 28, 2018, the court held a permanency-planning hearing. The court found that Holden had appropriate housing, income, and transportation. The court again noted his "complicated personal life" but stated that he had complied with DHS's requests regarding those issues during visitations with the children. The court noted that DHS anticipated beginning the trial home placement with Holden when the school semester ended. The court again found that the children could not be safely placed with Stowell and relieved DHS of providing reunification services to her.

On August 15, the court held a review hearing. The court noted that the children had been on a trial home placement with Holden and that they had "done well in his care." The court found that Holden is a fit and proper person to be awarded care and custody of the children. The court awarded him custody but ordered DHS to maintain a protective-services case. The court further ordered Holden not to use corporal punishment. As to Stowell, the court found that DHS had discretion regarding visitation, but it prohibited extended or overnight visitation without approval from the ad litem.

On October 31, the court held a review hearing. DHS informed the court that the children had flourished in Holden's care and that permanency for the children had been achieved. DHS requested the court to close Holden's case but stated that the court needed to determine appropriate visitation for Stowell.

Stowell responded that she did not "have an objection necessarily to the closing of the case," but she requested the court to order standard visitation. Holden and the ad litem both requested limited supervised visits.

DHS then stated that the case had been open for two years, that it had offered Stowell supervised and unsupervised visitations, and that she had continued to be inappropriate during visitations. Thus, DHS asked the court to order only weekly one-hour supervised visits. The following colloquy then occurred:

| | |
|---|---|
| ATTORNEY FOR MOTHER: | Your Honor, I'm going to object at this point. I mean, if we want to put on some evidence, then let's do it, because I'm not going to sit here and let the Department just put on testimony through their attorney. And I'm going to call Mr. Holden to the stand. |
| ATTORNEY FOR DHS: | I am making, basically, a closing argument. I'm not testifying. I'm telling the Court why we have made the recommendation that we have made. So if I could go ahead and do that, and then if she wants to call a witness, I don't object to that. |
| ATTORNEY FOR MOTHER: | Just note my objection. |
| THE COURT: | So noted. I think that I've sat through the course of this case for long enough to understand the obstacles and issues, and probably can make the appropriate ruling. |
| ATTORNEY FOR DHS: | Thank you, Your Honor. |
| THE COURT: | You still need to call a witness, Ms. Weimar? |
| ATTORNEY FOR MOTHER: | Let me see if I can get a hold of my client. |
| THE COURT: | I think your client has left the building. |
| ATTORNEY FOR MOTHER: | Probably. |

. . . .

ATTORNEY FOR MOTHER:  So, my client just wants me to tell the Court that she wants her visitation with the Standard Order and she wants the case left open, so I think the Court has seen this case enough and the Court can decide how to make an appropriate order.

Thereafter, on January 28, 2019, the court entered an order closing the case and permanently placing the children with Holden. The court found that it was contrary to the welfare of the juveniles to be returned to the custody of Stowell and that it was in their best interest to be placed with Holden. The court awarded Stowell weekly supervised visitations. This appeal followed.

This court reviews findings in dependency-neglect proceedings de novo, but the circuit court's findings will not be reversed unless the findings are clearly erroneous. *Ellis v. Ark. Dep't of Human Servs.*, 2016 Ark. 441, 505 S.W.3d 678. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* While we give due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given their testimony, the circuit court's conclusions of law are given no deference. *Id.*

On appeal, Stowell argues that the circuit court erred by granting permanent custody of the children to Holden in the absence of any evidence that the placement was in the best interest of the children. She points out that the court entered the January 28, 2019 review order, which closed the case and placed the children permanently with Holden, following the October 31, 2018 hearing where no evidence was presented. She asserts that the lack of evidence is disconcerting given the "numerous red-flags raised with regard to [Holden] and

6

acknowledged by the trial court throughout the course of this case." She further points out that the record does not show whether DHS conducted a home study.

We need not reach the merits of Stowell's argument due to invited error. Under the doctrine of invited error, a party may not complain on appeal of an erroneous action of a circuit court if she induced or acquiesced in that action. *Smith-McLeod v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 25, 571 S.W.3d 491; *J.I. Case Co. v. Seabaugh*, 10 Ark. App. 186, 662 S.W.2d 193 (1983); *see also Clark v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 286, at 5, 493 S.W.3d 782, 786 (holding that, pursuant to invited-error doctrine, where Clark's attorney argued to the circuit court that "significant change of circumstances" was required to effectuate a change of custody that arose solely from dependency-neglect action, she could not then argue on appeal that the circuit court had used the wrong standard from domestic-relations proceedings). Here, Stowell's counsel conceded at the October 31 hearing that the circuit court could make a ruling without receiving more evidence. Specifically, Stowell stated that she wanted the court to award her standard visitation, that the court "had seen this case enough," and that the court could decide how to make an appropriate ruling. Because Stowell invited the error that she now complains of, we affirm.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.